## Mima Woltzen, Appellee, v. A. H. Wieman, Executrix, Appellant.

### Gen. No. 5609.

1. VERDICTS—*when not disturbed as against the evidence.* A verdict will not be set aside as against the evidence unless clearly and manifestly so.

2. STATUTES—*rule of construction as to inconsistent provisions.* Where two inconsistent provisions become the statute law at the same time, the specific prevails over the general.

3. PRACTICE—*section 52 of Act construed.* The "execution" referred to in section 52 of the Practice Act required to be proved by the plaintiff because of a verified denial is modified by virtue of the Act of 1907 so that it no longer requires proof of delivery where the instrument is not in the possession of the signer.

Contested claim in court of probate. Appeal from the Circuit Court of Stephenson county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed March 13, 1912.

R. R. TIFFANY and O. R. ZIPF, for appellant.

WITTE & MANUS, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Mrs. Mima Woltzen filed a claim against the estate of her deceased grandfather, John Everts, in the County Court of Stephenson County, upon the following instrument:

"$1000.75                                             1907.

Within three months after date I promise to pay to the order of Mima Woltzen the sum of One Thousand seventy-five dollars after my death to receive.

Value received with interest before and after maturity at the rate of 5 per cent. until paid. Interest payable annually.                          JAN EVERTS.

Due two months from my death."

The executor filed an affidavit stating his belief

that said note was not made or delivered by said John
Everts and that the signature thereto was not the
genuine signature of John Everts.  There was a jury
trial and a verdict for appellee and a judgment allow-
ing the claim and an appeal by the executor to the Cir-
cuit Court.  On a jury trial in the Circuit Court the
issues were found for appellee and her damages were
assessed at $1,236.25 and pursuant to special interrog-
atories submitted by appellant the jury found that
there was a delivery of the note in question by John
Everts to Mima Woltzen; that the signature was in
the hand of John Everts and that it was founded upon
a good and valuable consideration from Mima Woltzen
to John Everts.  The bill of exceptions shows that ap-
pellant moved for a new trial.  Appellant's abstract
says that upon page 167 of the record the bill of ex-
ceptions shows that the motion for a new trial was
overruled and appellant excepted, but in fact the bill
of exceptions does not show that any action was ever
taken on the motion for a new trial.  The court entered
a judgment for appellee against the estate as of the
seventh class and this is an appeal by the executor
therefrom.

Appellee introduced a number of witnesses, who
testified that the signature to this note was in the
genuine handwriting of the deceased, and then offered
the note.  The note was in the possession of appellee
and therefrom a delivery was presumed, and it was
expressed to be for value received, which was sufficient
proof of consideration, and a *prima facie* case was
thereby made for appellee.

Appellant produced witnesses who testified that the
signature to the note was not in the handwriting of the
deceased.  These witnesses exceeded in number those
testifying for appellee on that subject, but they were
persons less intimately acquainted with the deceased
and less likely to be familiar with his handwriting.
Deceased was born in Aus Friesland and spoke and
wrote the German language and the name "Jan" in

the signature was in form like German writing, and the witnesses for appellant largely based their conclusion that the signature to the note was not genuine upon the fact that they had never seen him write his name that way and had never seen his signature in that form to any paper. Appellee's witnesses proved that "Jan" was the German form of his name and that he frequently so wrote his signature. In this state of the proof on that subject, we cannot say that the jury should have found that this was not his genuine signature, but, on the contrary, must treat their finding on that subject as correct and that deceased did prepare and sign this note with its expression that it was for value received.

Deceased lived and died in Stephenson county. Appellee was living in South Dakota at the time of her grandfather's death. Thereafter she and her husband wrote several letters to the executor which were introduced in evidence by appellant. From these letters it appears that appellee did not have this note in her possession, and did not know that it had been executed, till after her grandfather's death. George Klinger lived some eleven miles distant from appellee. About a week after her grandfather's death, appellee learned from George Klinger that he had received this note for her in an unsigned letter from an unknown person, who did not know appellee's address, but who sent him the note to be handed to appellee and directed him to tell appellee that if any one asked her when she received it she should say "last summer." John Everts died March 6, 1908, and appellee's first letter to the executor was dated March 19, 1908. It appears from these letters that appellee visited her grandfather in September, 1907, and that the deceased then told appellee that he would send her $800 or $1,000 as soon as he could. Appellee in one of those letters expressed her belief that her grandfather made the note in the fall of 1907, for she said that he had promised to help them in the spring so that they could have a little of

their own.  Appellee wrote very frankly and fully to
the executor and stated everything and sent him the
note for his examination and also sent him the un-
signed letter to George Klinger.  He afterwards re-
turned both the note and the unsigned letter to her.
On the trial in the Circuit Court appellant's counsel
notified appellee's counsel to produce said unsigned
letter, but appellee's counsel replied that appellee was
not present and they did not have the paper.  The
executor out of the presence of the jury testified to
the contents of this paper, but the court refused to per-
mit this evidence on that subject to go to the jury,
evidently because appellee's counsel had not been noti-
fied to produce it in time so that they could get it from
appellee from South Dakota.  Appellant's evidence to
the court did not show that it contained anything more
than was stated in appellee's letters which were in evi-
dence.

Section 52 of the Practice Act of 1907 provides that
no person shall be permitted to deny on trial the exe-
cution of any instrument in writing unless such person
denies the execution of such instrument by affidavit
or sworn plea.  This was a re-enactment of a former
statute, and the "execution" therein referred to has
been held to include delivery, and appellant argues
that appellee was bound to prove delivery and failed
to do so and therefore cannot recover.  On the same
day that the Practice Act of 1907 went into effect, the
"Negotiable Instruments Law" also went into effect,
of which section 16 of Article 1 contains the follow-
ing:  "Where the instrument is no longer in the pos-
session of a party whose signature appears thereon,
a valid and intentional delivery by him is presumed
until the contrary is proved."  This provision is more
specific than section 52 of the Practice Act, and where
two inconsistent provisions become the statute law at
the same time, the specific prevails over the general.
Accordingly we hold that the "execution" referred to
in section 52 of the Practice Act, required to be proved

by appellee because of appellant's affidavit, is modified so that it no longer requires proof of delivery where the instrument is not in the possession of the signer. It follows that, under the proof, John Everts signed this note and delivered it and therein expressed that it was for value received, which expression of a consideration prevails, unless overcome by other proof. It is possible that this note was still in the hands of John Everts when he died and that some one took it from his papers after his death and mailed it to George Klinger with directions to give it to appellee, but such conduct would have been wrongful, if not criminal, and it would not be presumed that such wrong was committed, in the absence of proof. The deceased did not intend that this note should be paid till two months after his death and it is just as consistent with the letters appellee wrote to appellant, which contain the only proof on the subject, that John Everts in his lifetime placed this note in the hands of some person whom he trusted, with directions to send it to appellee after his death. Such a delivery would be valid, and would vest title to the note in appellee, even if she did not know what had been done till after the maker died. Appellant insists that appellee's letters show that the note was a gift, and contends that, as it was not paid by John Everts in his lifetime, the gift must fail. The law is as stated by appellant, but the letters do not show that the note was a gift. Appellee may have rendered services for her grandfather for which he intended this note should be compensation. It will not be presumed that it was a gift against his statement that it was for value received, merely because appellee wrote that he had promised to send her $800 or $1,000 the following spring, so that they could have a little of their own. If there are any defects in the instructions given for appellee, we think they are cured by those given at the request of appellant.

The judgment is therefore affirmed.

*Affirmed.·*