PORT HURON ENGINE & THRESHER CO. *v.* TOWNSHIP OF
PORT HURON.

1. CONSTITUTIONAL LAW—APPEAL AND ERROR.
      Constitutional objections to the validity of legislation will
      not be passed upon when other questions raised are de-
      cisive of and dispose of the case.

2. SAME—TAXATION—HIGHWAY ASSESSMENT.
      Act No. 283, Pub. Acts 1909, 1 Comp. Laws 1915, § 4287
      *et seq.*, being a general statute affecting the entire State
      and creating a new system of highway tax assessment,
      levy, etc., repealed local acts which theretofore existed
      and included Act No. 293, Local Acts 1903, which provided
      for the assessment of highway taxes in Port Huron town-
      ship.

3. SAME—PUBLIC RECORD—TOWNSHIPS.
      The record of a highway assessment as levied by the
      township at an election must be sufficiently plain so that
      the assessing officer or other local official can determine
      therefrom what was the proper rate, and if the propor-
      tionate amount named was included in the labor tax or
      was intended to be excluded.

4. SAME.
      No general rule of law prohibits the repeal of a special
      act by a general one nor is there any principle forbidding
      such repeal without the use of words declaratory of that
      intent. The question is always one of intention and the
      purpose to abrogate the particular enactment is sufficiently
      manifested when the provisions of both cannot stand to-
      gether.

5. SAME—REPEAL.
      Of two legislative enactments repugnant to each other, the
      last one to take effect, being the latest expression of the
      legislative will, must govern.

Error to St. Clair; Law, J.   Submitted April 17,
1916.   (Docket No. 98.)   Decided June 1, 1916.

Assumpsit by the Port Huron Engine & Thresher
Company, a corporation, against the township of Port

Huron and another, for the recovery of taxes paid under protest. Judgment for plaintiff. Defendants bring error. Affirmed.

*Lincoln Avery* (*Walsh & Walsh,* of counsel), for appellants.

*W. L. Jenks,* for appellee.

STONE, C. J. This action was assumpsit, to recover township and highway taxes paid under protest. February 20, 1913, plaintiff paid to defendant township taxes assessed for the year 1912:

| | |
|---|---:|
| Township tax | $500 20 |
| Highway tax | 5,002 00 |
| Collection fee 4 per cent. | 220 09 |
| | $5,722 29 |

The illegality of the township tax is conceded, and the only questions remaining relate to the claimed invalidity of the highway tax. The case was heard before the court without a jury. Written findings of facts and conclusions of law were filed, and it was held that the highway tax in question was invalid for two reasons:

*First.* That the record of the township proceedings upon which the assessment of highway tax was based was not sufficient, or did not show a legal voting of any appreciable highway tax.

*Second.* That the highway tax was assessed under the provisions of Act No. 293, Local Acts 1903, and that this act was repealed by the general highway law of 1909, being Act No. 283, Pub. Acts 1909 (1 Comp. Laws 1915, § 4287 *et seq.*).

There was judgment for the plaintiff, and the defendants are here, assigning error on the findings.

The record made of the vote of the qualified electors of Port Huron township, held on the 1st day of April, 1912, as shown by the township records, which de-

fendants claim authorized the levy of the contested highway taxes, is as follows:

"1912.

"STATE OF MICHIGAN, } ss.:
  "County of St. Clair {

"At annual township election held on 1st day of April, A. D. 1912, the election board was organized, and gatekeepers, clerks, challengers and inspectors appointed, and sworn to their respective offices, and voting commenced and continued until a recess for noon was taken for the purpose of transacting other business of the town, the voting of money for highway purposes was taken up after the clerk's annual statement was read and accepted.

"Highway District No. 1 raised 65 cents on $100.00 valuation to be used on river road for macadamizing from a point below Salt Block to town line between Port Huron and St. Clair town.

"Highway District No. 2 raised 75 cents for stone road, and 25 cents for repair of all roads.

"W. F. Allen was elected overseer of highways in district.

"Highway District No. 3 raised 25 cents to be expended on Henry street.

"Highway District No. 4 raised 50 cents to be used for macadam road and repair of macadam road.

"Motion made and supported to repair and make other necessary repairs to shed and town hall.

[Signed] "JAMES REYNOLDS, Clerk."

The records of the township fail to show any other vote of electors, or any other authority for raising a highway tax for the year 1912. No vote or action to raise a highway tax was taken in 1912 by the township board, either alone or in conjunction with the highway commissioner of Port Huron township. The record of the proceedings at the annual township meeting was held insufficient on which to base the attempted assessment or highway tax, and it was stated by the trial judge in his findings of facts that this record cannot be varied by parol testimony to show that the amount voted by the electors of district No. 4 was

intended to be at a different rate or a different amount from that shown by the record.

From the fact that in the first highway district mentioned, the amount was stated as 65 cents on $100 valuation, and the subsequent entries, and especially in the fourth district, the one in question having dropped the words "on $100 valuation," it was the claim of the plaintiff, and the finding of the trial judge, that this tax was not authorized, or any tax in excess of 50 cents. We think this a narrow view of the question, and prefer not to rest our decision upon that point.

It was further urged in this court that the record was otherwise defective, in that there was no determination in 1912 as to the manner in which the highway tax should be assessed, and that this was a step necessary to be taken. And it is urged that the record did not indicate whether that was the sole tax to be levied for highway purposes, or whether it was the money tax, to which might be added the labor tax. It is obvious that the record, in order to justify the levying of any tax, must be sufficiently plain so that the assessing officer, the supervisor or highway commissioner, could tell whether 50 cents was the proper rate, or that sum, plus the labor tax, was the right amount.

Passing the first point, it is urged by the plaintiff that the title of the general act of 1909 (1 Comp. Laws 1915, § 4287 *et seq.*) clearly indicates the purpose of the legislature to enact a law which should be general and apply to the entire State, and attention is called to the title and to the provisions of that act; and it is urged that its provisions are in conflict and inconsistent with the local act above referred to, and that the local act was thereby repealed. On the other hand, it is urged by defendants that, even if the court should find that the legislature intended to repeal the local act by this general act, this was prohibited by the new Constitution, and that the legislature has no power to

repeal a local act without the consent of the people concerned; and our attention is called to section 30, art. 5, of the present Constitution, which provides as follows:

"The legislature shall pass no local or special act in any case where a general act can be made applicable, and whether a general act can be made applicable shall be a judicial question. No local or special act shall take effect until approved by a majority of the electors voting thereon in the district to be affected."

And it is urged by counsel for the defendants that as this general act of 1909 provided for no referendum vote, it cannot be held that it could repeal the local act in question, and counsel say:

"*First.* If it attempts to repeal a local law, then it is local and not general. It is not general legislation.
"*Second.* The courts will not allow the legislature to do by indirection what they cannot do directly."

And it is urged that passing an act to repeal a local act is itself local legislation, and that this provision of the Constitution cannot be affected or defeated by terming the legislation a general act. And it is said that the people of this township have the right to say what laws shall be repealed that are local in their nature, and that this is a local matter entirely, and therefore, until the people vote to change their method of raising and expending the highway taxes, the legislature cannot interfere. And attention is also called to the fact that the title of the act of 1909 does not, by express terms, attempt to repeal any other provisions of the statute. The plaintiff replies that if there is any constitutional difficulty relating to the act of 1909, because of the provisions of the new Constitution, above quoted, then plaintiff is not obliged to rely upon the act of 1909, but calls our attention to Act No. 108, Pub. Acts 1907, and claims that that general statute repealed the local act in question, and that there was no consti-

tutional prohibition against such legislation at the date of the passage of the last-named act. Constitutional questions will not be passed upon when other decisive questions are raised by the record which dispose of the case. *People* v. *Quider*, 172 Mich. 280, 288 (137 N. W. 546). We shall therefore look into the provisions of the local act of 1903, and also said public act of 1907, for if it shall turn out that the last-named act, passed before the new Constitution was adopted, repealed said local act, then the judgment of the circuit court shall be affirmed. Act No. 293, Local Acts 1903, being an act entitled:

"An act to provide for the assessment and collection of highway taxes, and the expenditure thereof, in the township of Port Huron, St. Clair county, Michigan."

The act was approved March 4, 1903, and was given immediate effect.

Section 1 provided that for convenience in the assessment and collection of highway taxes and the expenditure thereof, the commissioner of highways of the said township should, by and with the sanction and approval of the township board, on the first Monday of March, 1903, divide the township into not less than 5 nor more than 12 road districts, which districts should be composed of contiguous territory.

Section 2 provided that at each annual township meeting of said township between the hours of 12 o'clock noon and 1 o'clock in the afternoon, the qualified electors of each road district should separate themselves into groups, and a majority of the qualified electors of each district present and voting should elect, *viva voce*, or in such manner as the electors might direct, an overseer of highways for their respective districts. The said overseer should be a qualified elector, and a resident taxpayer of his district, and no elector

except a resident in the district should vote for such overseer.

Section 3 provided that at the time and place of such election of overseer, a majority of the qualified electors of each district present and voting, should determine: *First*, whether the highway tax should be assessed on a money basis, and paid in money instead of labor, and, if they so determined, such assessment should not be less than one-fourth of 1 per cent., and should not exceed 1 per cent. on the aggregate assessed valuation of the property of the district, according to the assessment roll for said district for the fiscal year; *second*, whether the highway tax should be assessed partially in labor, and, if so, upon the amount of highway labor to be assessed, which should not exceed one day's labor upon each $100 assessed valuation, as in the preceding division provided; also upon the amount of money tax, if any, to be levied in the district for necessary improvements to be made in the highways and bridges during the year beyond what the highway labor, as above provided, would accomplish, not exceeding one-half of 1 per cent. on each $100 of assessed valuation as in the preceding subdivision provided.

Section 4 provided that the township clerk should record the proceedings of each district meeting in the township records, and within 15 days after the annual township meeting should certify to the commissioner of highways the amount and the manner of raising the highway tax for each road district, as determined at such district election, and the commissioner should thereafter apportion and assess, or cause to be assessed by the supervisor, said taxes in the manner provided by the general laws of the State.

Section 5 provided for the acceptance of office by the overseers, and the giving of bonds.

Section 6 provided that in case any of the overseers so elected should fail to qualify, or in case the electors

in any road district neglected or refused to elect an overseer, or to determine the amount of highway tax to be levied in such district, or the manner in which it should be assessed, the highway commissioner should appoint an overseer for said district for the ensuing year in the manner provided by the general laws of the State. The commissioner might in such cases assess not exceeding 1 per cent. upon the assessed valuation of the property in such district, according to the assessment roll for the fiscal year, which tax might be assessed in money or labor as the commissioner might determine.

Section 7 provided that the commissioner should thereafter proceed, at the time and in the manner provided by the general laws of the State, so far as applicable and not inconsistent with the provisions of the act, to assess, or cause to be assessed, the highway tax for the several road districts.

Section 8 provided that capitation or poll tax should continue to be assessed in each of said districts in the manner provided by the general laws.

Section 9 provided that all highway labor and money tax assessed and collected within said districts for highway purposes, should be expended within the limits of the district in which the same was assessed: Provided, that nothing contained in the act should be construed to prohibit or prevent the building and maintenance of stone or macadam roads within the several districts.

Section 10 provided that the duties of the several officers named should conform to the general laws.

That Act No. 108, Pub. Acts 1907, introduced radical changes in the manner of assessing, collecting, and expending highway taxes, and that it covered the whole subject and was State-wide, and provided a uniform system throughout the State, is apparent from

an analysis of that statute. The title of the act was as follows:

"An act to provide for the assessment of money taxes for highway purposes and to repeal chapter two, 'Assessments for Highway Purposes,' and chapter three, 'The Performance of Labor on Highways and the Commutation Therefor,' of act number two hundred forty-three of the Public Acts of eighteen hundred eighty-one, as amended, being compiler's sections number four thousand and seventy-two to four thousand one hundred three, inclusive, of the Compiled Laws of eighteen hundred ninety-seven, and all acts and parts of acts inconsistent with the provisions hereof."

Section 1 provided that the highways in every organized township in this State should be laid out, improved and maintained by two money taxes; one tax should be known as the road repair tax, and should be assessed on all property in the township outside of the limits of incorporated villages, which tax should not exceed 50 cents on each $100 valuation according to the assessment roll of the preceding year, and the other tax should be known as the highway improvement tax, and should be assessed on all taxable property in the township, including that within the limits of incorporated villages, which tax should not exceed 50 cents on each $100 valuation according to the assessment roll for the last preceding year. All highway moneys belonging to the township or to any subdivision thereof, at the time of the passage of the act should be added to the road repair fund, or to the highway improvement fund as the township board might direct, except such moneys as had been appropriated or set aside for a special purpose, which should be used for the purposes for which they were appropriated or set aside.

Section 2 provided what account the highway com-

missioner should render to the township board at the
annual meeting in 1908.

Section 3 provided what the account of such officer
should contain after 1908.

Section 4 required the township board to present
such statement at the annual township meeting.

Section 5 provided that at the annual township meet-
ing held in each organized township after the year
1907, the electors should, by a majority of those pres-
ent and voting, who did not reside in any incorporated
village, determine the amount of road repair tax to
be raised for the ensuing year, not exceeding 50 cents
on each $100 valuation, according to the assessment
roll for the last preceding year, and at said meeting
the electors should also, by a majority of all those
present and voting, including residents of incorporated
villages in such organized township, determine the
amount of highway improvement tax to be raised for
the ensuing year, not exceeding 50 cents on each $100
valuation, according to the assessment roll for the last
preceding year.

Section 6 provided that if the electors present at any
annual township meeting should neglect or refuse to
vote any road repair tax, or highway improvement
tax, the township board and the township highway
commissioner, acting jointly, should order to be levied
such a sum or sums, for either or both of these funds,
as might appear to them necessary and advisable, not
to exceed the amounts named in section 1 of the act.

Section 7, after providing for the transmission of a
certified copy of the proceedings to the supervisor,
provided that such taxes should be levied and collected
in the same manner as moneys for general township
purposes were levied and collected. The taxes so levied
should be carried out in two separate columns in the
tax roll, one as the road repair tax, and the other as
the highway improvement tax, and the township treas-

urer was required to keep separate accounts of the same.

Section 8 provided that when the amount of either or both of said taxes should have been determined as aforesaid, the township board might borrow an amount not exceeding three-fourths of the tax determined upon for the ensuing year, for the purpose of paying for labor, materials, tools, or machinery, or other expenses in connection with the laying out, building, repairing, or improving of highways and bridges of the township.

Section 9 provided that the road repair tax should be expended for labor, material, and other necessary expenses, under the supervision, and by the direction of the township highway commissioner, on the highways and bridges which would directly benefit the property taxed, not exceeding $100 on any one mile of highway, unless otherwise directed by the township board. Should the highway, or highways or bridges directly adjacent to any property taxed, be in good condition, so that no repairs were necessary thereon, then the tax raised on such property might be expended by the commissioner on other highways or bridges in the township where it might be needed; provided, that if there was a surplus after the highway or highways or bridges directly adjacent to the property taxed had been repaired and put in good condition, such surplus might be expended by the commissioner on other highways and bridges in the township wherever any improvement might be needed; provided, further, that upon complaint, in writing, to the township board by any 10 or more resident taxpayers that the road repair fund was being unequally and unjustly applied, or work improperly performed, the township board might direct the expenditure of such road repair fund, or the manner of performing such work; provided, further, that not to exceed $25 should

be expended by the commissioner in any one year for tools or machinery, without consent of the township board.

The act further provided that there should be but one road district in each organized township, except that in townships consisting of more than one surveyed township, each surveyed township might be a road district, and it provided for the election of an overseer for each road district, who should work under the direction of the township highway commissioner.

The act further provided an elaborate plan of survey and profile of survey, for all highway improvements by turnpiking, graveling, grading, etc., by private parties, the work to be supervised by the commissioner.

The last section of the act repealed the specific sections of the statute mentioned in the title, and also added:

"All acts and parts of acts, contravening the provisions of this act are hereby repealed."

We have here, at the risk of tediousness, presented the substance of the two enactments named, that their respective provisions may the more readily be compared. The act of 1907 covers the whole subject of assessments for highway purposes in the State. It did away with the highway labor tax, and placed the whole subject upon a money tax basis. It constituted each surveyed township a road district, and, in short, made many radical changes in the law. Its terms were so broad and comprehensive that, in our opinion, it repealed all acts, general and local, conflicting with it, including Act No. 293, Local Acts 1903.

Under the local act different conditions might exist in the several road districts. In one the highway tax might be assessed on a money basis, and in another it might be assessed partly in labor. The act of 1907 changed the policy of the State in that regard, and

provided a money tax only, throughout the State, there being evident dissatisfaction with the labor tax system.

There can be no question, in our opinion, that the provisions of the local act were inconsistent with, and that they do contravene the provisions of, the act of 1907; and, unless there is some specific rule or principle which prevents the application of the general language of the repealing clause of the general act, it is clear that the local act was repealed.

The following excerpt from 1 Lewis' Sutherland on Statutory Construction, p. 533, is applicable here to legislation prior to the adoption of the present Constitution, whatever may be said of the rule now:

"There is no rule of law which prohibits the repeal of a special act by a general one, nor is there any principle forbidding such repeal without the use of words declarative of that intent. The question is always one of intention, and the purpose to abrogate the particular enactment by a later general statute is sufficiently manifested when the provisions of both cannot stand together. * * * Special or local laws will be repealed by general laws when the intention to do so is manifest, as where the latter are intended to establish uniform rules for the whole State."

Where two legislative acts are repugnant to, or in conflict with, each other, the one last passed, being the latest expression of the legislative will, must govern even though it contains no repealing clause. In the instant case the repealing clause is present. 36 Cyc. pp. 1073, 1078, 1080, 1090.

We have examined the authorities upon this subject cited by counsel, and are of opinion that the general rule in such cases is that the later act repeals the former. We think the intent to abrogate the laws in conflict with the act of 1907, in so far as the assessment of highway taxes is concerned, is so clear and distinct that it must be said that the repeal of the

local act is unavoidable. *Hopkins* v. *Sanders,* 172 Mich. 227 (137 N. W. 709) ; *People* v. *Wenzel,* 105 Mich. 70 (62 N. W. 1038) ; *People* v. *Furman,* 85 Mich. 110 (48 N. W. 169).

The subject-matter of the legislation contained in the act of 1907 is State-wide, and we can read nothing in either act from which it will be presumed that there were any special, distinct, or particular conditions of local import in the township of Port Huron which imply that the legislature necessarily intended to exclude it from the general law relating to highways, as prescribed in the act of 1907.

Our conclusion disposes of the case, and we must hold that, the circuit judge having reached the correct conclusion, the judgment of the court below is affirmed.

OSTRANDER, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred. KUHN and BIRD, JJ., did not sit.