(137 So. 54)

## AMERICAN NAT. BANK v. BAUMAN.

### In re BAUMAN.

No. 31351.

July 17, 1931.

Rehearing Denied Oct. 6, 1931.

Edward Barnett, of Shreveport, for relator.

Bryan E. Bush, of Shreveport, for respondent.

OVERTON, J.

Plaintiff caused executory process to issue on a mortgage, given by defendant to secure a promissory note, made by him, for the sum of $9,500, with 6 per cent. per annum interest thereon and 10 per cent. attorney's fees, dated January 26, 1924, payable six months after date to the order of defendant, and indorsed by him in blank. There appear no credits on the note.

The sheriff, under the writ of seizure and sale that issued, seized the mortgaged property, and proceeded to advertise it for sale. Defendant thereupon applied to the district judge for a preliminary injunction to stop the sale; the application being based upon the ground that the note prescribed long prior to the issuance of executory process, by the prescription of five years, which defendant pleaded. The application contained no prayer for the issuance of a rule nisi; it being defendant's position that he is entitled to the writ on the face of the record, without the issuance of a rule nisi.

The trial judge refused to grant the preliminary injunction, save after a hearing upon a rule nisi, which he offered to issue, and also offered to issue a temporary restraining order, without bond, pending the hearing by him of the application, if a proper showing therefor should be made.

The question presented is whether the judge acted rightfully in refusing to grant the injunction, except after a hearing had upon a rule nisi.

Prior to the adoption of Act No. 29, of 1924, all the general rules, applying to the issuance of injunctions, were found in the section of the Code of Practice, treating of injunctions, beginning with article 296. Other rules were provided, not applicable to injunctions generally, but only to injunctions applied for,

upon stated grounds, in proceedings by executory process. These are found in the chapter of the Code of Practice, treating of executory process, and are contained in articles 738 to 743, and 748, 749, inclusive, of that Code.

Article 738 authorizes the enjoining of the sale, upon the written opposition of the debtor, on his alleging, under °oath, one of the reasons contained in article 739, among which is the ground here relied on, namely, that the debt is barred by prescription. Article 740 provides that, when the judge grants the injunction on any ground prescribed in article 739, he shall require no surety from the defendant, but shall pronounce summarily on the merits of the opposition, if the plaintiff require it. Article 741 provides that the plaintiff in the executory proceedings may compel the defendant to prove, in a summary manner, before the judge, the truth of the facts alleged in his opposition. Articles 742 and 743 relate to the disposition of the opposition, according to the proof produced on the trial thereof, and articles 748 and 749 relate to injunctions requiring the giving of bond upon grounds seldom invoked, and require only bare mention here.

Unquestionably, the general rules applicable to the issuance of injunctions, contained in the section of the Code, beginning with article 296, have been modified by Act No. 29 of 1924, page 39. There would have been no reason for the passage of the act had it not been the intention to include within its scope the modification of those rules. The question, however, is: Did the act include within its scope the modification of the rules peculiar to the issuance of injunctions in proceedings by executory process?

The purpose of the act is to regulate procedure in respect of temporary restraining orders and preliminary writs of injunction. In section 2 thereof provision is made for the issuance of a rule nisi, upon application being made for a writ of injunction, and also for the issuance of a temporary restraining order, in the discretion of the court, upon the furnishing of bond, except where bond is not required under existing applicable laws, which means where bond is not required for the issuance of a preliminary writ of injunction. Section 1 of the act provides that: "Hereafter no writ of injunction shall be issued without notice [referring to the rule nisi], given as hereinafter provided, to the opposite party or parties to be affected thereby, and without opportunity given for hearing of the opposite party." Section 7 of the act provides that: "Only such laws, or parts of laws, as are in conflict herewith are hereby repealed."

Prior to the adoption of Act No. 29 of 1924, a rule nisi was not required in order to obtain a preliminary injunction, save in certain specified instances, such as an application for an injunction to enjoin a sale for taxes, but the judge usually acted upon the face of the application and the documents thereto attached. He so acted in proceedings for a preliminary injunction to enjoin the sale about to be made under executory process, for, if the application showed cause for the injunction, it was considered that the applicant was entitled to the writ as a matter of right. H. & C. Newman v. Frevin, 42 La. Ann. 720, 7 So. 799. As to whether the applicant for an injunction still has the right, upon the face of his application, if grounds be there shown, to a preliminary injunction to restrain the execution of a writ of seizure and sale, issued in proceedings by executory process, without the issuance of a rule nisi, depends upon whether section 1 of the act,

quoted above, modifies the procedure theretofore existing for the granting of the writ in such proceedings.

As we have observed, the section of the Code, under the title of "Injunction," prescribes the general rules for the issuance of injunctions, and the section of the Code, under the heading of Executory Process," prescribes special rules, peculiar to that process, for the issuance of the writ of injunction against the writ of seizure and sale in such process, whereas Act No. 29 of 1924 prescribes general rules, governing the issuance of the preliminary writ of injunction, and unmistakably modifies the general rules, prescribed under the heading of "Injunction," and, after mature consideration, our conclusion is that the act also modifies the rules under the heading of "Executory Process" to the same extent as it does under the heading of "Injunction," namely, to the extent of prohibiting the issuance of a preliminary injunction until after a hearing on a rule nisi, with leave to the court to grant, in the meantime, in proper cases, ex parte, a temporary restraining order, with or without bond, depending upon whether the preliminary injunction demanded may issue with or without bond.

The object had in view, in enacting the act of 1924, was to rid the state of the abuse to which the ex parte issuance of the writ of injunction had been subjected for many years, by arranging the procedure for its issuance so that the judge would have to act no longer blindly on the face of the application for the writ, but would be placed in position to act with the crucial facts before him, obtained contradictorily with the party, sought to be enjoined, after a prompt hearing, and with the right, in the exercise of a sound discretion, to grant a temporary restraining order pending the hearing.

The object had in view, in adopting the act of 1924, applies to the same extent, if not to a greater extent, to the issuance of a preliminary injunction on the grounds enumerated in the Code of Practice under the title of "Executory Process," as it does on the grounds, under the heading of "Injunction," found therein. Every ground enumerated for the issuance of the writ, under the title of "Executory Process," whether it appears in article 739, or articles 748 and 749 of the Code of Practice, presents a fact, which may be shown not to exist upon a hearing had. Such being the case, it is obvious that the grounds for the issuance of the writ, under the title of "Executory Process," on an ex parte showing, made by the applicant for the writ, are as much, to say the least, subject to abuse, as are those found under the heading of "Injunction." So obvious does this appear that it would almost seem that, if the Act of 1924 does not modify the articles of the Code of Practice, under the title of "Executory Process," relative to the issuance of injunctions, the Legislature blundered by so wording the act as not to make it applicable to injunctions against the writ of seizure and sale in proceedings by executory process.

It is not an answer to this statement to say that the act was not intended to apply to the issuance of injunctions in such proceedings, because, when the injunction issues under article 739 of the Code of Practice, pretermitting articles 748 and 749, which are seldom, if ever, used, the plaintiff, in executory process, may compel the defendant therein, that is, the one obtaining, ex parte, the preliminary injunction, to prove in a summary manner the truth of the facts alleged in his application, as provided in articles 740 and 741 of the Code. This is not an answer, for, when the plaintiff may require such proof, the preliminary injunction has

issued. The abuse, as relates to the procedure prior to the act of 1924, did not end with the dissolution of the injunction in the trial court. A suspensive appeal lay in all appealable cases from the judgment rendered in the suit. The effect of the appeal was to reinstate the injunction, no matter how baseless the grounds were upon which it issued, and it remained reinstated until the case was finally disposed of by the appellate court. The appeal was obtainable by furnishing a bond, based on the costs, which practically in all instances was for a small amount, and, where a judgment for a specific sum was rendered as damages for the dissolution of the injunction, for one-half over the judgment for damages. Parks v. Hughes, Sheriff, 143 La. 1063, 79 So. 861; J. B. Levert Co. v. Jno. T. Moore Planting Co., 133 La. 591, 63 So. 198; State ex rel. Stackhouse v. Judge, 21 La. Ann. 152. The effect of this procedure was to render it easy to maintain, for some time, an injunction that, had the trial judge known the facts before he granted the writ, he would not have granted it.

The Legislature did not commit the error of confining the act to injunctions applied for on grounds enumerated in the Code of Practice under the heading of "Injunction." It knew, for the fact was well known, that the procedure for writs of injunction had been as much abused when applied for on grounds enumerated under the title of "Executory Process" as it had been on grounds enumerated under the heading of "Injunction." It knew that the defendant, in executory process, could not justly object to proving the ground on which he applies for a preliminary injunction contradictorily with the plaintiff in executory process, before the writ is ordered to issue. It also knew, for reason supports the view, that not to extend the reme-dial legislation of the act of 1924 to the articles of the Code of Practice, under the title of "Executory Process," touching the issuance of the writ of injunction, would far from lessen the difficulty of borrowing money to be secured by mortgage. The Legislature therefore, in the very first section of the act, enacted that "Hereafter no writ of injunction shall be issued without notice, given as hereinafter provided, to the opposite party or parties, and without opportunity given for hearing of the opposite party." This language is broad enough to include within its scope any provision of law touching the issuance of preliminary injunctions. In its scope it includes the procedure for the issuance of the writ against the execution of the order of seizure and sale in executory process.

This position is rather supported than weakened by the provision in section 2 of the act, relative to the issuance of temporary restraining orders, pending a hearing on the rule nisi, reading that "the court may, in its discretion, issue a temporary restraining order against the defendant [meaning the plaintiff in executory process], upon the applicant furnishing bond (unless bond be not required by existing applicable laws). * * *" By the words "existing applicable laws" in the foregoing quoted clause is meant laws governing the issuance of the preliminary injunction itself. These, that is, those requiring no bond, may be divided into two classes: first, those where the law dispenses with bond by reason of the nature of the injunction and the ground upon which the writ is asked, consisting of those where the writ is asked upon the grounds enumerated in article 739 of the Code of Practice, under the title of "Executory Process"; and, secondly, those where the law exempts the applicant from giving bond, in any judicial proceeding, with-

out reference to the ground upon which the writ is asked, such as the state, a parish, or a municipality.

It would seem that the Legislature, in enacting this provision, had in mind not only those who, by reason of their governmental character, are exempt from giving bond, but those also who, by reason of the grounds upon which they make the application, are exempt from giving it. Therefore it may be said that the Legislature, in granting this exemption, which relates to the giving of bond to obtain a temporary restraining order, had in mind that the act of 1924 would apply as well to injunctions prayed for under the title of "Executory Process" as under the title of "Injunction."

■ It is suggested that the repealing clause of the act of 1924, reading, "Only such laws, or parts of laws, as are in conflict herewith are hereby repealed," shows an intention not to interfere, in any manner, with the procedure for obtaining an injunction appearing under the title of "Executory Process." An analysis of the clause fails to show, in our opinion, any such intention. The clause, but for the use of the word "only," is similar to the usual repeal of conflicting laws, or parts of laws. The word "only" does not alter the substance of the clause. Strike it from the clause, or permit it to remain, and the clause, in either event, means the same, namely, that those laws, or parts of laws, in conflict with the act, are repealed. The only purpose of using the word was to bring out with greater clearness the meaning of the clause, by accentuating the exclusion from the repeal, those laws, or parts of laws, not in conflict with the act. There was no intention, shown here, to save from the repeal any conflicting provisions found in the articles on injunction under the title of "Executory Process."

■■ As we have said in the first part of this opinion, what may be termed the general procedure for obtaining a preliminary injunction, prior to the adoption of the act of 1924, was found wholly in the Code of Practice, under the title of "Injunction," and what may be termed a special procedure, peculiar to injunctions, applied for against the writ of seizure and sale, in proceedings by executory process, was found wholly in the Code of Practice under the title of "Executory Process." Counsel for the applicant makes such a distinction, and invokes the rule to support his client's position as to the inapplicability of the act of 1924 to the laws providing the special procedure for obtaining an injunction, contained in the Code of Practice under the title of "Executory Process," invoked in Naturalization of Osthoff v. Flotte, 48 La. Ann. 1094, 20 So. 282, 283, reading that "a general rule prescribed by a later statute is not accepted as manifesting any purpose to disturb the previously enacted special rule." This rule obviously rests on the same general principle as does the well-established rule that a general statute does not repeal a local or a special statute, although the two are in conflict, unless it clearly appear that it was the legislative intention to repeal the local or special law.

■ The rule stated in Naturalization of Osthoff v. Flotte, is not an unreasonable rule, when properly applied, to ascertain the object sought, namely, the legislative intent. The rule, however, like the rule relative to the repeal of local or special laws by general laws, has no application where the surrounding circumstances and the purpose to be accomplished show that the intention was that the special law must yield to the extent necessary to accomplish the purpose of the new legislation. 36 Cyc. pp. 1087–1090. Such, we think, is the case here.

■ The act of 1924 is a remedial act. Being such, it should not be strictly, but liberally, construed to accomplish the purpose of its enactment, namely, to prevent the trial judge, in the interest of justice, from being forced into the position of granting a preliminary injunction blindly on the face of an ex parte application, when, perhaps, with the true facts before him, he would not hesitate, nor would any other judge, to refuse the writ. 36 Cyc. pp. 985, 986.

■ It is needless to say that, because the note set out in the petition for executory process, and attached to the petition, is prescribed on its face, it does not follow that it is, in fact, prescribed. It may be that the course of prescription was interrupted by acknowledgments or suspended by the holding of something in pledge by the creditor.

Construing the law as herein set forth, the refusal of the lower judge to grant the preliminary injunction, until it appears proper to do so, after a hearing on a rule nisi, is affirmed.