Elite Laundry Co. *v.* R. H. Dunn, *d.b.a.* Dunn Hospital

(No. 9559)

Submitted April 11, 1944.  Decided May 30, 1944.

*I. L. Hark* and *J. Howard Hundley,* for plaintiff in error. *Homer Blizzard, John F. Ellison* and *Charles A. Brown,* for defendant in error.

ROSE, PRESIDENT:

The Elite Laundry Company, a corporation, hereinafter called the plaintiff, instituted a civil action before a justice of the peace of Kanawha County against R. H. Dunn, doing business as Dunn Hospital, who will be herein called the defendant. The bill of particulars filed showed a claim for laundering done by plaintiff during the months of August and September, 1941, the charges for which aggregated $233.71. The defendant filed a counter-claim for articles sent to the plaintiff for laundering but which are alleged never to have been returned, the value of which is placed at $151.28, and tendered a check for the residue of plaintiff's claim. The tender was not accepted, and on trial had there was no dispute as to the plaintiff's bill. The justice sustained in full the defendant's counter-claim and rendered judgment for $82.65.

On appeal the case was tried to a jury in the Court of Common Pleas of Kanawha County. At the conclusion of the evidence for both plaintiff and defendant the plaintiff moved for a directed verdict in its favor on the grounds (1) that there was a lack of legal proof as to the quantity of laundering delivered to and received from the plaintiff, and, (2) that there was no competent evidence of the value of any of the articles alleged to have been lost. The court overruled the motion on the first ground but sustained it on the second. At the direction of the court the jury returned a verdict in favor of the plaintiff for the

full amount of its claim of $233.71, and judgment was entered accordingly on August 28, 1942.

On a writ of error from the Circuit Court of Kanawha County this judgment was reversed, the verdict set aside and the cause remanded to the Court of Common Pleas for a new trial. Afterward, the plaintiff filed in the Circuit Court its petition alleging that that court had no jurisdiction to consider the petition for a writ of error or to act on a writ of error granted, for the reason that such petition was not filed in that court until the 30th day of March, 1943, or more than four months after the rendering of the judgment complained of, and prayed for the setting aside of all orders entered by the Circuit Court in the case. This the court refused to do. The plaintiff then applied for and obtained a writ of error from this Court to the judgment of the Circuit Court.

We are first concerned with the question raised by the plaintiff's petition to the Circuit Court. Code, 58-4-4, provides that "No petition shall be presented to the circuit court or judge for an appeal from, or writ of error or supersedeas to, any judgment, decree or order rendered or made by such court of limited jurisdiction, whether the State be a party thereto or not, which shall have been rendered or made more than four months before such petition is presented." The Court of Common Pleas of Kanawha County, however, was created by a special act passed by the Legislature February 20, 1915, being Chapter 109 of the Acts of the Legislature of that year. Section 18 of that act provides that:

> "Any person who is a party to any such controversy wishing to obtain an appeal, writ of error or supersedeas, in the cases named in the seventeenth section of this act, may present to the circuit court of Kanawha County, or the judge thereof in vacation, a petition therefor, and chapter one hundred and thirty-five of the code of West Virginia, concerning appeals to the supreme court of appeals shall so far as applicable, govern the proceedings on such appeal, writ of error or super-

sedeas, as to the duties of the petitioner, the said court and clerk thereof; * * *."

Chapter 135 of the Code as it then stood allowed one year within which appeals from the Circuit Court to the Supreme Court of Appeals might be presented. This period was, by Chapter 57, Section 3 of the Acts of the Legislature, 1921, reduced to eight months.

The plaintiff insists that the four-months' provision of Code, 58-4-4, controls, and that the record shows that the petition to the Circuit Court was not presented until March 30, 1943.

The defendant's position is that the provisions of the special act creating the Court of Common Pleas of Kanawha County should prevail and that he, therefore, had eight months after the 28th day of August, 1942, within which to present his petition for review to the Circuit Court, but further insists that the record, properly construed, shows that the petition was legally presented to that court within four months from the date of the judgment complained of.

The constitutionality of the whole of Article 4 of Chapter 58 of the Code is challenged on the ground that it originated in the Code of 1931 but is not comprehended in the title of the act by which that Code was constituted. The title of that act reads thus:

"An act to revise, arrange and consolidate into a Code the general statutes of the State of West Virginia, and to repeal all acts and parts of acts of a general nature in force on the thirty-first day of December, nineteen hundred and thirty, subject to such limitations and exceptions as are provided in chapter sixty-three of this Code."

It is urged that this title cannot justify the inclusion in the Code of a revision, rearrangement or consolidation of anything but "general statutes", or the repeal of any "acts and parts of acts" except those of a "general nature"; and that, therefore, any attempted or purported amendment of the act creating the Court of Common Pleas, or any

part thereof, is outside the title of the Code Act and void. We admit the potency of this argument. We had this question before us in the cases of *Roberts* v. *Travelers Insurance Co.* and *Roberts* v. *The General American Life Insurance Co.*, in which a decision by a divided Court was announced March 3, 1942, to the effect that the eight-months' provision of the special act creating the Court of Common Pleas survived in the face of the provisions of Code, 58-4-4. But a rehearing was granted in those cases, and before reargument, on motion of the plaintiff in each case, the writs of error were dismissed. Accordingly, no final judgment of this Court proceeded out of those cases. We must, therefore, reexamine and determine the question in the case at bar.

The Constitution of this State, Article 6, Section 30, provides that "No act hereafter passed, shall embrace more than one object, and that shall be expressed in the title". This provision is mandatory. *Simms* v. *Sawyers,* 85 W. Va. 245, 101 S. E. 467. But there always exists a strong presumption in favor of the constitutionality of any legislative act. *State* v. *Cordi,* 103 W. Va. 23, 136 S. E. 505; *State* v. *Haskins,* 92 W. Va. 632, 115 S. E. 720; *Booten* v. *Pinson,* 77 W. Va. 412, 89 S. E. 985; *State ex rel. Dillon* v. *County Court of Braxton County,* 60 W. Va. 339, 55 S. E. 382. Also, from sheer impossibility this constitutional provision cannot be enforced with the same degree of rigor in an act comprehending the whole statutory law of the State, as in a simple statute. *Central of Georgia Ry. Co.* v. *State,* 104 Ga. 831, 31 S. E. 531; *Johnson* v. *Harrison,* 47 Minn. 575, 50 N. W. 923; *Marston* v. *Humes,* 3 Wash. 267, 28 P. 520. Further, we cannot be oblivious to the fact that this Code provision has been in existence since January 1, 1931, during which time a large number of cases have come to this Court through circuit courts from courts of limited jurisdiction, from the records in which we can see that by general agreement of the bench and bar during the last thirteen years, the limitation of four months has been accepted without challenge. This acquiescence, or practical construction, of the statute in

question is not at all binding upon the courts, but long agreement by courts and attorneys as to the constitutionality of an act, as respects its title, has been given weight on the question of the title's sufficiency. *Detroit City Ry. Co.* v. *Mills,* 85 Mich. 634, 48 N. W. 1007; *Somerset County Commissioners* v. *Pocomoke Bridge Co.,* 109 Md. 1, 71 A. 462.

The Legislature, under the title of the act which we call the Code, of course, could not amend, repeal, or otherwise modify special acts. An attempt so to do would be wholly outside the purview of the title. From this viewpoint, Article 4 of Chapter 58 of the Code, relating to appeals from courts of limited jurisdiction, each of which is created by a special act, might be of questionable constitutionality, to say the least. But if there existed in our statutory law, prior to and at the time of the adoption of the Code of 1931, any general law dealing with appeals from courts of limited jurisdiction, such statute or statutes could be revised, arranged or consolidated by that Code. And there was such a statute. By Section 2 of Chapter 1 of the Acts of 1872-3, it was provided that:

> "The appellate jurisdiction to the court of appeals from every court of limited jurisdiction which has been or shall be established, shall be directly to the circuit court of the county wherein such appeal is taken, or to the court of appeals, as the case may be. If the amount in controversy is less than one hundred dollars, exclusive of interest, the appeal shall be to the circuit court of the county wherein the appeal is taken. If it exceed that sum, said appeal may be taken to said circuit court, or to the court of appeals, as the petitioner may desire. All such appeals to the supreme court of appeals shall be subject to the same limitations, exceptions, regulations and conditions as appeals from the circuit courts, or writs of error thereto."

This act survived in the same language until the adoption of the Code of 1931, being found in Code, 1923, Chapter 114A, section 8. Having been originally a part of an act

which, by its title, covered only courts of limited jurisdiction in cities and towns, and having been preserved in a chapter entitled "Municipal Courts", this section probably could not be said to apply to other courts of limited jurisdiction. But it was clearly a general law, as distinguished from a special or local law. "A statute relating to persons or things as a class is a general law; one relating to particular persons or things of a class is special." *McEldowney* v. *Wyatt,* 44 W. Va. 711, 30 S. E. 239. And being a general law, it was covered perfectly within the title of the act creating the Code of 1931, and could, therefore, be revised, arranged or consolidated. It was, in fact, not arranged or consolidated, but it was revised.

> "A 'revision' of the statutes is more than a restatement of the substance thereof in different language, but implies a reexamination of them, and may constitute a restatement of the law in a corrected or improved form, in which case the statement may be with or without material change, and is substituted for and displaces and repeals the former law as it stood relating to the subjects within its purview." Black's Law Dictionary, 3rd Ed., p. 1556.

The provisions of this old statute were revised so as to make them apply, not only to courts of limited jurisdiction existing within municipalities, but to all courts of limited jurisdiction; and a multitude of details as to appellate procedure were added. All this was clearly a mere revision of the former brief statute on the subject, and, therefore, within the title of the act. We consider, therefore, that the provisions of Section 4, Article 4, Chapter 58, Code 1931, relating to appeals from courts of limited jurisdiction to circuit courts, are immune to the charge of unconstitutionality.

It is insisted, however, that, even if constitutional, Code 1931, Chapter 58, Article 4, Section 4, being a general law, cannot prevail over the special law found in the act creating the Court of Common Pleas of Kanawha County. It is, of course, the universal rule that a general statute

will not affect an earlier special one, unless the repugnance between them is such that they cannot coexist, and the intention of the Legislature to make the subsequent general act controlling is clearly manifest. *Sturm* v. *Fleming*, 31 W. Va. 701, 8 S. E. 263; *Powell* v. *City of Parkersburg*, 28 W. Va. 698; *The Chesapeake & Ohio Ry. Co.* v. *Hoard*, 16 W. Va. 270.

These cases necessarily imply that a general statute will amend or repeal a special statute where such intent on the part of the Legislature is clearly apparent. In many jurisdictions it is expressly so held. *Commonwealth ex rel. Owens* v. *Matthews*, 303 Pa. 163, 154 A. 359; *Johnson* v. *Jupilat*, 114 N. J. Eq. 139, 168 A. 455; *Port Huron Engine & Thresher Co.* v. *Port Huron Township*, 191 Mich. 590, 158 N. W. 19; *People ex rel. Knecht* v. *Chicago & E. I. R. Co.*, 300 Ill. 218, 133 N. E. 308; *Eastham* v. *Steinhagen*, 111 Tex. 597, 243 S. W. 457; *Shepherd* v. *Clements*, 224 Ala. 1, 141 So. 255; *American National Bank* v. *Bauman*, 173 La. 336, 137 So. 54.

In the present instance there can be no question of the absolute repugnancy between the period of eight months for appeals prescribed by the special act and the period of four months established by the later general statute. And there is equal certainty as to the intention of the Legislature. Code 58-4-4 simply says that no petition for an appeal or writ of error from any court of limited jurisdiction can be presented unless within four months after the date of the decree or judgment complained of. There is no exception and no limitation expressed or implied. The sentence is all inclusive, and applies to all courts of limited jurisdiction.

"A statute revising the whole subject matter of a former one, or a former series of statutes, becomes, by reason of its scope and purpose, to the full extent of the terms used and necessarily implied, the exclusive rule and law, governing the subject, and is, therefore, a substitute for the former statute or statutes, repealing such parts thereof as are inconsistent with the new act, and not a

mere amendatory act, adding to or detracting from the former law." *State* v. *Harden,* 62 W. Va. 313, 58 S. E. 715, 60 S. E. 394.

Therefore, although a general law, it must prevail over the preceding special law unless restrained by some other controlling statute.

But it is urged, with much vigor and sound reason, that the appellate period from the Court of Common Pleas cannot be changed from that provided in the special act creating the court because of Code, 63-1-3, which provides that "No act authorizing the issuing of any state bonds, or of a special or local character, is repealed by the adoption of this Code." This provision, however, is simply one section of a whole Code, and is of exactly the same dignity as Section 4, Article 4, Chapter 58, and all other sections thereof. It does not have the controlling effect of the title of the act. Nor is its position in the last chapter of the Code significant. That position can only be taken into consideration when all other rules of construction have been vainly exhausted. *Ebbert* v. *Tucker,* 123 W. Va. 385, 393, 15 S. E. 2d 583, 587.

The general provision of Code, 63-1-3, purporting to exempt local acts from repeal must necessarily be subordinate to Article 4 of Chapter 58 expressly and specifically providing the method of appeal from courts of limited jurisdiction. The rule is that where there is repugnancy between provisions of a statute, that provision which is specific must be given preference over that which is merely general. *Panama R. Co.* v. *Johnson,* 264 U. S. 375, 44 Sup. Ct. 391, 68 L. Ed. 748; *Mutual Electric Co.* v. *Village of Pomeroy,* 99 Ohio State 75, 124 N. E. 58. *In re Sayers' Estate,* 203 Calif. 753, 265 P. 924; *State* v. *Masnik,* 125 N. J. L. 34, 12 A. (2d) 871; *Peavy* v. *McCombs,* 26 Idaho 143, 140 P. 965; *People's Trust & Savings Bank* v. *Hennessey,* 106 Ind. App. 257, 153 N. E. 507; *State ex rel. City of Fargo* v. *Wetz,* 40 N. D. 299, 168 N. W. 835; *Woltzen* v. *Wieman,* 168 Ill. App. 220.

Code 1931, Chapter 58, Article 4, is elaborately specific, amounting to five pages, and setting up in complete detail

every step and rule of appellate procedure for courts of limited jurisdiction. There can be no possible question of the intent of the legislature. The very contents of the article put this matter beyond all conjecture; and a note by the revisers, preserved in the official Code, expressly states that the intention of that article was to consolidate into a single statute and make uniform the appellate procedure from all courts of limited jurisdiction. A mere blanket provision, consisting of a single sentence, that special acts are not repealed, must not be permitted to emasculate a whole article, which undoubtedly was designed and intended as a revised general law, to supersede certain provisions of certain special acts.

It is to be noted, however, that Code, 63-1-3, does not necessarily carry the comprehensive and sweeping meaning sought to be given it by the defendant. The language is simply that local acts shall not be "repealed". The word "repeal", unless qualified, may bear a very narrow and strict meaning. The section does not say, as might have been expected, that no part of a local act shall be repealed, nor that a local act shall not be revised, modified or otherwise affected, by the adoption of the Code. Nor does it say expressly that provisions of the Code shall not be operative when in conflict with some provision of a local act. The exact language is that local acts shall not be "repealed", and there is no pretense that the local act creating the Court of Common Pleas of Kanawha County is, in fact, repealed by any provision of the Code here under discussion. Unless we extend the meaning of the word "repeal" so as to make it signify that no local act or part thereof shall be repealed, revised or in any way superseded or affected by any provision of the Code, Section 3, Article 1 of Chapter 63 is not at all repugnant to the provisions of Section 4, Article 4, Chapter 58. This broader meaning will not be implied when to do so would render the statutory provision in which the word occurs repugnant to other provisions of the Code. In *Waggy* v. *Waggy*, 77 W. Va. 144, 87 S. E. 178, we held that "An unnecessary implication arising from the terms of

one section of a statute, inconsistent with express terms of another section relating to the same subject, yields to the expressed intention, and the two sections are not legally inconsistent or repugnant." In *Bank of Weston* v. *Thomas,* 75 W. Va. 321, 83 S. E. 985, it was said that: "The rule of construction, requiring effect to be given to all the terms used in a statute, if possible, is satisfied by assignment to them of a substantial, though limited, function or field of operation. It does not require allowance to them, of a scope of operation coextensive with their literal import." In *Ebbert* v. *Tucker, supra,* point 3 of the syllabus reads: "In the construction of a statute a court should seek to avoid any conflict in its provisions by endeavoring to reconcile every word, section or part thereof, so that each shall be effective; and where a statute lends itself to two constructions, one of which will result in an irreconcilable conflict between its provisions, and the other will result in no conflict, the latter construction should be adopted." Point 28 of the syllabus of *Coal & Coke Ry. Co.* v. *Conley et al.,* 67 W. Va. 129, 67 S. E. 613, reads: "It is the duty of a court to restrain the operation of a statute within narrower limits than its words import, if the court is satisfied that the literal meaning of its language would extend to cases which the legislature never designed to include in it."

Our conclusion is that Article 4 of Chapter 58 of the Code of 1931, is too clear and specific to admit of the conclusion that it was intended to be neutralized or made a nullity by the mere general saving clause found in Section 3 of Article 1 of Chapter 63.

The petition to the Circuit Court for the writ of error to the judgment of the Court of Common Pleas was not presented until after the expiration of four months from the date of judgment. Such a petition is required to be filed, first, in the office of the clerk of the trial court, and then to be transmitted by him to the Clerk of the Circuit Court. Code, 58-4-6. The appellate procedure prescribed by the act creating the Court of Common Pleas is precisely the same. Acts 1915, Chapter 109, Section 18; Code, 58-5-6.

The petition in this case bears a stamp showing that it was "Filed in the Clerk's office Court of Common Pleas of Kanawha County Nov 16 1942" and another stating that it was "Filed in Kanawha Circuit Court Clerk's Office Mar 30 1943". No explanation of this long interval is found in the record. The statute requires the clerk of the trial court to transmit the petition and record to the clerk of the appellate court "as soon as may be". One person is the clerk of both the courts here involved. It would seem that there was an abundance of time between November 16, 1942, and the expiration of four months after the entering of the judgment on the 28th day of August, 1942, for the transmission of this record to the Clerk of the Circuit Court. But the petition was not actually filed in the office of the Clerk of the Circuit Court until March 30, 1943, which, of course, constituted its presentation to that court. It was the duty of the Clerk of the Common Pleas Court, not of the defendant, to transmit the petition and record there. Whether the failure of the clerk, for more than four months, to transmit these papers from himself as Clerk of the Court of Common Pleas to himself as Clerk of the Circuit Court was occasioned by himself or by the applicant, does not appear, but there was, in fact, such a failure, and the Circuit Court, therefore, never had jurisdiction to consider the petition for the writ of error, and thus acquired no jurisdiction to award the writ or in any way to review the case.

The judgment of the Circuit Court, therefore, will be reversed and the writ of error awarded by that court dismissed.

*Reversed.*

LOVINS, JUDGE, concurring:

I concur in the result and the opinion, but I think there is an additional reason for holding that Code, 58-4-4, comes within the title of the Act which adopted the Code of 1931.

The special act which creates the Court of Common Pleas of Kanawha County provides as follows: "Any per-

son * * * wishing to obtain an appeal, writ of error or supersedeas in the cases named in the seventeenth section of this act, may present to the circuit court of Kanawha county, or the judge thereof in vacation, a petition therefor, and chapter one hundred and thirty-five of the code of West Virginia, concerning appeals to the supreme court of appeals shall so far as applicable, govern the proceedings on such appeal, writ of error or supersedeas, as to the duties of the petitioner, the said court and clerk thereof; * * *". Section 18, Chapter 109, Acts of the Legislature, 1915.

Chapter 135, Code of West Virginia, as it existed in 1915, was as much a part of Section 18, Chapter 109, Acts of the Legislature, 1915, as if the former had been incorporated in full in the special law. *Kendall* v. *United States,* 12 Pet. 524, 9 L. ed. 1181; *Engle* v. *Davenport,* 271 U. S. 33, 46 S. Ct. 410, 70 L. Ed. 813; Lewis' Sutherland Statutory Construction (2d Ed.) Vol. II, page 787; Statutory Construction, Crawford, Section 234. In practice subsequent changes in Chapter 135 as to the time within which to invoke appellate relief also changed Section 18 of the special act. See Chapter 57, Acts of the Legislature, 1921, wherein the time was shortened to eight months.

The title of the Act revising, arranging and consolidating the general statutes of this State into the Code of 1931 relates to the general statutes only; but the pertinent section of Chapter 109, Acts of the Legislature, 1915, is a general law *pro tanto,* and is, therefore, within the object expressed therein. Article VI, Section 30, Constitution.

I think that Section 18, Chapter 109, providing for the time within which writs of error and appeals from the Common Pleas Court of Kanawha County may be prosecuted to the circuit court of that county was a general law as related to the time in which to petition for review, and that the title of the Act enacting the Code of 1931 was sufficient to authorize the revision provided for in Code, 58-4-4.