George Ebbert *v.* W. B. Tucker *et al.*

(CC 640)

Submitted April 8, 1941.   Decided May 27, 1941.

*Handlan, Garden & Matthews, O'Brien & O'Brien* and *Frank A. O'Brien, Jr.,* for plaintiff.
*Charles P. Mead,* for defendant.

RILEY, JUDGE:

This certificate involves the correctness of a ruling of the Circuit Court of Ohio County in overruling a demurrer to plaintiff's bill of complaint (designated as a "petition for writ of injunction") in the equity suit of George Ebbert v. W. B. Tucker, Charles J. Schuck, Harry T. Clouse, William Armbrust, Dr. Frank A. Carroll, individually, and as purported members of the Civil Service Commission of the City of Wheeling, and Walter C. Smith, City Manager of the City of Wheeling.

The bill of complaint alleges, in part, that the defendants, except Smith, hold themselves out as members of the Civil Service Commission of the City of Wheeling,

appointed by the Council thereof under the provisions of an ordinance passed on October 10, 1939, pursuant to the charter of the City of Wheeling, enacted March 5, 1935 (Chapter 141, Acts, West Virginia Legislature, 1935), which, by its own provisions, upon ratification, became effective July 1, 1935. It sets forth various Acts of the West Virginia Legislature, providing for the creation and maintenance of civil service commissions relating to municipal firemen and policemen, as well as said charter; it avers that the defendants have proceeded to act under said ordinance by causing the publication of a notice in a public place for "Promotion Examination Traffic Sergeant Police Department" to be held on February 14, 1940, and by certain alleged action in regard to the selection of applicants for positions in the city fire department; and it avers that the ordinance, in so far as it provides for the selection and promotion of policemen and firemen, is invalid as to firemen as being in contravention of Chapter 60, Acts of the West Virginia Legislature, 1933, as amended by Chapter 67, Acts of the West Virginia Legislature, 1935, and likewise as to policemen under Chapter 57, Acts West Virginia Legislature, 1937.

The bill prays that the holding of a promotion examination for the position of traffic sergeant in the police department be enjoined and restrained by preliminary injunction; that the ordinance passed on October 10, 1939, be decreed null and void; that the defendants be enjoined, inhibited and restrained by preliminary injunction from taking any further action of any nature, character or description under or by virtue of said ordinance; and that upon final hearing the preliminary injunction be made permanent.

On April 5, 1940, the circuit court granted a temporary injunction, enjoining defendants from: (1) holding the promotion examination for position of traffic sergeant in the police department; (2) taking any further action under the ordinance of October 10, 1939, so far only as it affects the police department; and (3) taking any further action under said ordinance so far only as it affects the fire department, and to the extent only that the ordinance

is inconsistent with Chapter 60, Acts West Virginia Legislature, 1933, as amended.

As suggested by the trial court in a written opinion made a part of the record, the question for decision is the validity of the ordinance of October 10, 1939. This ordinance is entitled "An ordinance amending an ordinance numbered 622 entitled 'An ordinance creating and defining a civil service commission and providing for, creating and defining a body of rules and regulations to be known hereafter as "The civil service code of the City of Wheeling" providing for the operation of same and repealing all civil service ordinances or parts thereof in conflict herewith', adopted February 1, 1937, and amended by ordinance numbered 657, adopted November 1, 1937"; and provides for the creation of a single civil service commission applicable to the fire and police departments and employees in the administrative services of the city, which shall consist of five commissioners, two of whom shall be appointed by the council; one by the paid employees in the classified services of the city; one by the Ohio Valley Trades and Labor Assembly; and one by the Wheeling Chamber of Commerce.

Whether the ordinance is valid as affecting the police and fire departments of the City of Wheeling is dependent upon the validity and effect of four West Virginia statutes:

(1) Chapter 60, Acts West Virginia Legislature, 1933, providing for the creation and maintenance of a civil service commission to govern the appointment and promotion of employees of paid fire departments in cities and municipalities, which commission shall consist of three commissioners, one of whom is to be appointed by the mayor or chief executive officer of the city, one by the local trades board, or in case no such board exists in said city, then by the paid international association of fire fighters, and the third by the local chamber of commerce; which statute, in section 20 thereof, expressly excludes the City of Wheeling from its operation.

(2) Chapter 67, Acts West Virginia Legislature, 1935, amending section 20 of the last mentioned statute by the

omission of the name "Wheeling" therefrom as one of the excepted cities.

(3) Chapter 141, Acts West Virginia Legislature, 1935, providing a new charter for the City of Wheeling, which charter provides, among other things, for the adoption by city council of a civil service ordinance.

(4) Chapter 57, Acts West Virginia Legislature, 1937, providing for the creation and maintenance of a civil service commission to regulate and determine all appointments to and promotions in all paid police departments in each city and municipality of five thousand population or more, which shall consist of three commissioners, one of whom shall be appointed by the governor, one by the local fraternal order of police, and a third by the local chamber of commerce, or if there be none, by a business men's association.

The ordinance, so far as it concerns civil service in the police department, involves only the consideration of the charter of the City of Wheeling, and the 1937 act providing for civil service relating to paid police departments. The charter became the governing law of said city on July 1, 1935. The general civil service statute relating to police departments became effective June 1, 1937. So we are met at the threshold with the question whether the later statute repealed the earlier one. Sections 52 and 53 are the pertinent sections of the charter providing for civil service applicable to the fire and police departments and employees in the administrative services of the city. They read:

"Sec. 52. The provisions of the general laws of West Virginia which require and provide civil service in and for municipal fire and police departments in this state, and which do not exclude Wheeling from the operation thereof, shall apply to the fire and police departments of Wheeling.

"Sec. 53. The council shall prepare a civil service ordinance which shall be applicable to the fire and police departments and to all employees in the administrative services of the city, and which shall provide for one civil service commission for the city. Such ordinance shall be adopted

within one year after this charter becomes effective; and after its adoption it shall not be altered or amended in any material respect except by three-fourths vote of all members elected to council, after notice of such proposed amendment has been published in two Wheeling newspapers of general circulation in the city not later than three days before such proposed amendment is to be acted upon; nor shall such ordinance be repealed except by majority vote of the electorate of the city. Until the general civil service ordinance provided herein shall have been adopted, the civil service laws applicable to the Wheeling police department and the Wheeling fire department at the time this charter becomes effective shall have the force and effect of provisions of the charter of the city."

The legislature evidently intended by the enactment of the 1937 police civil service act to provide for a complete and all-inclusive system for the appointment, promotion, reduction, removal and reinstatement of all officers (except the chief of police), policemen or other employees of all paid police departments in all cities and municipalities of five thousand or more. In fact, in section 20, it is expressly so stated. We have attempted in vain to reconcile this statute with the city charter, and have concluded that, so far as they affect paid police departments, they are irreconcilable, and that the general statute was intended as a substitute, so far as civil service applicable to paid police departments of cities with a population of five thousand or more is concerned, for the provisions of the charter, either of which resulted in repeal of the pertinent charter provisions by implication. *State* v. *Jackson,* 120 W. Va. 521, 199 S. E. 876, and cases cited on page 526 of the official report; *Beck* v. *Cox,* 77 W. Va. 442, Point 3, Syl., 87 S. E. 492. But we need not rely solely on the repeal by implications because of the broad and specific provisions of the repealer clause contained in said section 20 of the said general statute; only to quote it will dispense with further comment on this point:

"Sec. 20. *Inconsistent Acts Repealed.* All acts. and parts of acts of the Legislature of the state of West Virginia, general, special, *local, or municipal charters,* or parts thereof, in relation to any civil service measure affecting the paid police departments of any city or municipality inconsistent with this act shall be, and the same are hereby repealed insofar as such inconsistencies shall exist. It is understood and intended by this act to furnish a complete and exclusive system for the appointment, promotion, reduction, removal and reinstatement of all officers, policemen or other employees of said police departments in all cities and municipalities of five thousand population or more, wherein the members of the police department are paid." (Italics supplied.)

Because the city charter was enacted after the effective dates of Chapter 60, Acts of West Virginia Legislature, 1933, relating to civil service applicable to paid municipal fire departments, and Chapter 67, Acts West Virginia Legislature, 1935, purporting to amend section 20 thereof by the omission of the word "Wheeling" from the list of excepted cities, the validity of the ordinance so far as it affects firemen presents a more difficult question.

In the first place, defendants' counsel say that Chapter 67, Acts West Virginia Legislature, 1935, is unconstitutional because of insufficiency of its title (W. Va. Const., Art. VI, Section 30). We find no merit in this position, because the title to the purported amending statute refers specially to the chapter and section number of the statute it purports to amend, and states that its purpose is to amend section 20 of the latter statute. This is sufficient. *Heath* v. *Johnson,* 36 W. Va. 782, 15 S. E. 980; *Carnegie Natural Gas Co.* v. *Swiger,* 72 W. Va. 557, 563, 79 S. E. 3, 46 L. R. A. (N. S.) 1073; *Hood* v. *Wheeling,* 85 W. Va. 578, 102 S. E. 259; *Laing* v. *Fox,* 115 W. Va. 272, 282, 175 S. E. 354. It follows that when the city charter was enacted and became effective, the fire department of the city was subject to the general civil service law of 1933, relating to paid firemen, which statute was all-embracing in its terms.

The question then arises whether sections 52 and 53 of the city charter operate, so far as civil service relating to firemen is concerned, to repeal the earlier statute. Section 53, provides, as heretofore stated, for an ordinance creating a single civil service commission applicable to the fire and police departments, and all employees in the classified administrative services of the city. But section 52 provides that the provisions of the general laws of West Virginia, which require and provide civil service in and for municipal *fire* and *police* departments in the state, and which do not exclude Wheeling, shall be applicable to the *fire* and *police* departments of Wheeling. Surely, Chapter 60 of the 1933 Acts West Virginia Legislature, as amended by Chapter 67, Acts, 1935, is such a statute. Does it, however, conflict with or override the provisions of section 53? Certainly, on the theory which plaintiff advances, there is a direct and irreconcilable conflict between the two sections of the charter. If section 52 stood alone, the general civil service act of 1933 would apply to the fire department of the city, which would be regu lated by a civil service commission composed of three members, one to be appointed by the mayor, one by the local trades board, and the third by the chamber of commerce. But it must be read in connection with section 53, which expressly provides for an ordinance creating a *single* civil service commission, regulating the members of the fire and police departments of the city and all employees in classified services; and, further, that the general state civil service laws shall be applicable only until said ordinance has been passed. If section 52 is construed to mean that the 1933 firemen's civil service act shall apply, notwithstanding the adoption of the ordinance pursuant to section 53, the two sections of the charter are entirely irreconcilable. They can only be reconciled, we think, on the theory that section 52, read in connection with the last sentence of section 53, simply provides for the maintenance in *status quo* of the general civil service law relating to municipalities until the passage by the city council of an ordinance as provided by section 53. On this basis of construction, there is no conflict between the two

sections, though it is true that section 52 and the last sentence of section 53 are somewhat repetitious. We think that this construction should be adopted. In the construction of a statute containing apparently conflicting provisions, this Court should seek to avoid any conflict by endeavoring to reconcile every word, section or part thereof, so that each shall be effective. Crawford, Statutory Construction (1940), section 166; I Lewis' Sutherland, Statutory Construction (2d Ed.), section 268 (153); *Wellsburg and State Line R. Co.* v. *Panhandle Traction Co.,* 56 W. Va. 18, Point 8, Syl., 48 S. E. 746; *State* v. *Jackson,* 120 W. Va. 521, Point 3, Syl., 199 S. E. 876. This construction, we think, is a correct appraisement of the intention of the legislature, and it is entirely consonant with the rule of construction that "where there is a conflict between two parts of a single act, the one latest in position will be declared to be the law, as containing the latest expression of the legislative will." *Board of Education* v. *Tyler County Court,* 77 W. Va. 523, 529, 87 S. E. 870, 872; *Speidel Grocery Co.* v. *Warder,* 56 W. Va. 602, 608, 49 S. E. 534; *Harvey Coal & Coke Co.* v. *Dillon, Tax Commissioner,* 59 W. Va. 605, 632, 53 S. E. 928, 6 L. R. A. (N. S.) 628; *Hudson* v. *State Compensation Commissioner,* 121 W. Va. 461, 5 S. E. (2d) 108, 111. See also, II Lewis' Sutherland, Statutory Construction, sec. 349; Crawford Statutory Construction, sec. 166, to the effect that this rule of construction has been criticized. It, of course, has its limitations and should be applied only where there exists an irreconcilable conflict between different sections of the same act, *In Re Steehler's Estate,* 195 Cal. 386, 233 P. 972; and after there are no other means available for ascertaining the legislative intent. *People* v. *McClare,* 99 N. Y. 82, 1 N. E. 235.

Under the circumstances, the ordinance of November 10, 1939, adopted under the charter provisions, must be upheld, unless it is invalid because the original ordinance, of which it is an amendment, was adopted more than one year after the effective date of the charter. The provision for the one-year limitation, contained in section 53, we think, is directory and not mandatory. 46 C. J. 1037.

Under our holding, Chapter 57 of the Acts of the West Virginia Legislature, 1937, should prevail over the charter, so far as the latter relates to civil service applicable to the Wheeling police department, and under it the appointment, promotion and regulation of members of the city police department will be governed by a civil service commission composed of three members, one to be appointed by the governor, one by the local fraternal order of police, and the third by the local chamber of commerce. We likewise hold that sections 52 and 53 of the charter and the ordinance of October 10, 1939, should prevail over Chapter 60, Acts West Virginia Legislature, 1933, as amended, and that the appointment, promotion and regulation of members of the city fire department and all the employees of the classified services, as set forth in said ordinance, shall be governed by a single civil service commission consisting of the defendant commissioners, who were appointed in accordance with the provisions of the ordinance.

We are, therefore, of opinion that the circuit court did not err in overruling the demurrer to plaintiff's bill of complaint so far as it applies to the police department of the City of Wheeling, but did err in overruling the demurrer to the bill so far as it applies to the fire department of the city.

*Affirmed in part; reversed in part; remanded.*