# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## January 2018 Term

**FILED**

**April 5, 2018**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 17-0592

BRICKSTREET MUTUAL INSURANCE COMPANY,
Petitioner,

V.

ZURICH AMERICAN INSURANCE COMPANY,
Respondent.

---

Certified Questions from the
United States Court of Appeals for the Fourth Circuit
Honorable Barbara Milano Keenan; J. Harvie Wilkinson, III;
and Stephanie D. Thacker, Circuit Judges
Appeal No. 16-2204

CERTIFIED QUESTIONS ANSWERED

---

Submitted: January 17, 2018
Filed: April 5, 2018

Don C.A. Parker
Spilman Thomas & Battle, PLLC
Charleston, West Virginia
Attorney for the Petitioner

Trevor K. Taylor
Taylor Law Office

Philip J. Sbrolla
Jeffrey B. Brannon
Cipriani & Werner, PC
Wheeling, West Virginia
Attorneys for the Respondent

**Morgantown, West Virginia**
**Attorney for Amicus Curiae,**
**American Insurance Association**


**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1. The Workers' Compensation Office of Judges does not possess jurisdiction over a declaratory judgment action initiated by an insurance carrier for the purpose of determining whether coverage for a workers' compensation claim exists under a second policy of insurance such that a second carrier is obligated to contribute to the payment of workers' compensation benefits to an injured employee who suffered a single workplace accident.

2. Pursuant to W. Va. Code § 33-46A-7(a) (2008) (Repl. Vol. 2011), parties to a professional employer agreement must designate either the professional employer organization or the client-employer as the responsible party for obtaining workers' compensation insurance coverage for covered employees.

3. Pursuant to W. Va. Code § 33-46A-7(b) (2008) (Repl. Vol. 2011), and W. Va. C.S.R. § 85-31-6.3, when parties to a professional employer agreement designate the professional employer organization ("PEO") as the responsible party for obtaining workers' compensation insurance coverage for covered employees, the policy obtained by the PEO is primary over a policy obtained by a client-employer. Therefore, coverage under a workers'

i

compensation policy purchased by the client-employer is triggered only if the PEO or its carrier default on their obligation to provide workers' compensation coverage.

**Davis, Justice:**

This Court is herein presented with three certified questions from the United States Court of Appeals for the Fourth Circuit. The underlying action is a dispute between two insurance companies, petitioner BrickStreet Mutual Insurance Company ("BrickStreet") and respondent Zurich American Insurance Company ("Zurich"), over whether both companies should contribute to the payment of workers' compensation benefits arising from a single uncontested work-related injury. The subject injury was to an employee who had been hired by BrickStreet's insured, Employers' Innovative Network, LLC ("EIN"), a professional employer organization ("PEO"), and assigned by EIN to work for Zurich's insured, Taggart Site Services Group ("Taggart"). Our resolution of this matter necessitates that we answer only two of the questions certified:[1]

> (1) Does jurisdiction lie exclusively with the West Virginia Workers' Compensation Office of Judges to hear disputes between insurance carriers regarding whether one or both carriers are responsible for contributing toward payment of an employee's workers' compensation benefits?

---

[1]The third question, which need not be answered, asked:

> (3) When a PEO is named as the sole employer in a workers' compensation claim, does the "other insurance" clause in the PEO's workers' compensation insurance policy require the client-employer's insurer to pay a portion of benefits, when the PEO is not an insured party under the client-employer's policy?

See *infra* note 2 for an explanation of why it is unnecessary for us to address this issue.

1

(2) West Virginia Code § 33-46A-7(a) requires that parties to a professional employer agreement designate "either" the professional employer organization (PEO) "or" the client-employer as responsible for obtaining workers' compensation insurance coverage for covered employees . . .; and under subsection (b) of the statute, if the PEO is the designated party, the client-employer "shall at all times remain ultimately liable" to provide workers' compensation coverage for covered employees. Do these statutory provisions mandate the designated party's workers' compensation policy as the primary policy over coverage provided by the other party, precluding the PEO and client-employer from agreeing to provide shared coverage? And, if the PEO is designated as the responsible party to obtain workers' compensation coverage, does the term "ultimately" trigger liability by the client-employer for such coverage only if the PEO, or its carrier, defaults?

(Footnote defining "covered employee" omitted).

We reformulate the first question and answer it in the negative, finding that the Workers' Compensation Office of Judges does not have jurisdiction over a declaratory judgment action such as the one underlying the instant proceeding. We answer the second question in the affirmative, and conclude that, pursuant to W. Va. Code § 33-46A-7(a) (2008) (Repl. Vol. 2011), parties to a professional employer agreement must designate either the professional employer organization or the client-employer as the responsible party for obtaining workers' compensation insurance coverage for covered employees. Moreover, pursuant to W. Va. Code § 33-46A-7(b), and W. Va. C.S.R. § 85-31-6.3, when parties to a professional employer agreement designate the PEO as the responsible party for obtaining

2

workers' compensation insurance coverage for covered employees, the policy obtained by the PEO is primary over a policy obtained by a client-employer.  Therefore, coverage under a workers' compensation policy purchased by the client-employer is triggered only if the PEO or its carrier default on their obligation to provide workers' compensation coverage.[2]

# I.

## FACTUAL AND PROCEDURAL HISTORY

In 2010, EIN executed a professional employer agreement (sometimes referred to as a "PEO agreement") with Taggart "to provide professional employer organization services at [Taggart's] workplace(s) through the assignment to [Taggart's] workplace(s) of qualified *EIN employees* ('Worksite Employees'), including supervisory personnel." (Emphasis added).[3]

---

[2]Because we find the workers' compensation insurance policy obtained by a PEO under the circumstances herein presented is the primary policy, and a client-employer policy is not triggered absent a default by the PEO or its insurance carrier, we need not consider the impact of an "other insurance" clause contained in the PEO policy. Accordingly, we do not reach the third question certified to this Court by the Fourth Circuit. See *supra* note 1 for the text of the third question.

[3]The agreement further specified that EIN would be responsible for, *inter alia*, the hiring, personnel relations, wage payment, discipline, and termination of its worksite employees.  Taggart was responsible for day to day supervision and control of EIN's worksite employees to the extent necessary for Taggart to conduct its normal business.

EIN and other PEOs in this State are governed by W. Va. Code § 33-46A-1 *et seq*. With respect to workers' compensation, the West Virginia Code requires, in relevant part:

(a) The responsibility to obtain workers' compensation coverage for covered employees in compliance with all applicable law *shall be specifically allocated in the professional employer agreement to either the client-employer or the PEO.*

(b) If the responsibility is allocated to the PEO under the agreement:

(1) The agreement shall require that the PEO maintain and provide workers' compensation coverage for the covered employees from a carrier authorized to do business in this state: Provided, That the provisions of section seven [§ 23-2-7], article two, chapter twenty-three of this chapter[4] may not be abrogated by a PEO agreement *and the client-employer shall at all times remain ultimately liable under chapter twenty-three of this code to provide workers' compensation coverage for its covered employees*[5];

---

[4]Under W. Va. Code § 23-2-7 (1974) (Repl. Vol. 2017), "[n]o employer or employee shall exempt himself from the burden or waive the benefits of this chapter [Chapter 23] by any contract, agreement, rule or regulation, and any such contract, agreement, rule or regulation shall be pro tanto void."

[5]The term

"[c]overed employee" means a person employed by a client-employer for whom certain employer responsibilities are shared or allocated pursuant to a PEO agreement. Persons who are officers, directors, shareholders, partners and managers of the client-employer and who perform day-to-day operational services for the client-employer will be covered employees only to the extent expressly set forth in the professional employer agreement.

(continued...)

4

W. Va. Code § 33-46A-7 (footnotes and emphasis added).  Accordingly, and of particular

relevance to the instant dispute, the professional employer agreement between EIN and

Taggart expressly required that "EIN shall obtain and maintain workers' compensation

coverage on all Worksite Employees assigned to [Taggart's] workplace(s) and shall

administer all related workers' compensation claims.  [Taggart] shall, however, maintain its

status as a complying employer with its current insurance carrier. . . ."

In compliance with the foregoing agreement, EIN secured workers'

compensation coverage through a multiple coordinated policy issued by BrickStreet.[6]  The

_____

[5](...continued)
W. Va. Code § 33-46A-2(c) (2008) (Repl. Vol. 2011).  "'Client-employer' means an
employer who enters into a professional employer agreement with a PEO."  W. Va. Code
§ 33-46A-2(b).

[6]BrickStreet represents that it is undisputed that this policy is a multiple
coordinated policy.  With respect to PEOs,

(c) Workers' compensation coverage may be provided:

(1) On a master policy basis, under which a single policy
issued to the PEO provides coverage for more than one
client-employer, and may also provide coverage to the PEO with
respect to its worksite employees . . . .

(2) *On a multiple coordinated policy basis, under which
a separate policy is issued to or on behalf of each
client-employer or group of affiliated client-employers with
certain payment obligations and policy communications
coordinated through the PEO*; or

(continued...)

BrickStreet policy names Taggart as an insured and provides that BrickStreet "will pay promptly when due the benefits required of you by the workers [sic] compensation law."

Likewise, Taggart had workers' compensation coverage through a policy issued by Zurich. The policy was issued to Taggart's parent company and listed Taggart as a named insured. Thus, by virtue of this policy, Taggart complied with both its obligation imposed by W. Va. Code § 33-46A-7 to "remain ultimately liable under chapter twenty-three [§ 23-1-1 et seq.] of this code to provide workers' compensation coverage for its covered employees," and its obligation under the professional employer agreement with EIN to "maintain its status as a complying employer with its current insurance carrier. . . ."

Jonathan Gutierrez ("Mr. Gutierrez") was hired by EIN and assigned to work at a Taggart workplace. In January 2012, during the coverage periods of the two aforementioned workers' compensation policies, Mr. Gutierrez sustained serious injuries in the course of and resulting from his employment. Mr. Gutierrez filed a claim for workers' compensation benefits with EIN. He did not file a claim with Taggart. Mr. Gutierrez's claim was submitted to BrickStreet. BrickStreet determined Mr. Gutierrez's claim was

---

[6](...continued)
        (3) On any other basis approved by the commissioner.

W. Va. Code § 33-46A-7(c) (2008) (Repl. Vol. 2011) (emphasis added).

6

compensable, and this decision was not protested. Accordingly, BrickStreet began paying Mr. Gutierrez's workers' compensation benefits.

BrickStreet explains that it learned of the Zurich policy through a deliberate intent action filed by Mr. Gutierrez against Taggart in relation to the injuries he sustained in January 2012.[7] Accordingly, in December 2014, BrickStreet sought contribution from Zurich toward the substantial workers' compensation benefits it had paid to or on behalf of Mr. Gutierrez.[8] Zurich refused, and, on May 13, 2015, BrickStreet filed a declaratory judgment action against Zurich in the United States District Court for the Southern District of West Virginia. Zurich filed a motion to dismiss that was denied. Thereafter, both parties moved for summary judgment. By order entered September 15, 2016, the district court granted summary judgment to BrickStreet and denied Zurich's summary judgment motion. The district court concluded that Zurich was obligated to reimburse BrickStreet for half of all past and future benefits paid to or on behalf of Mr. Gutierrez. Zurich appealed the decision to the

---

[7]Mr. Gutierrez filed a lawsuit against Taggart and others asserting deliberate intent and various negligence claims. The lawsuit resulted in a confidential settlement. BrickStreet states that Zurich paid funds from the Zurich policy to settle Mr. Gutierrez's deliberate intent action against Taggart. Under the agreement between EIN and Taggart, "EIN will not have any liability for the failure of [Taggart's] workplace to comply with [w]orkplace [s]afety laws."

[8]According to the Fourth Circuit, the benefits BrickStreet has paid in relation to Mr. Gutierrez's clam have exceeded two-million dollars and ultimately may exceed four-million dollars.

United States Court of Appeals for the Fourth Circuit. The Fourth Circuit then certified three questions to this Court. The two dispositive questions are:[9]

> (1) Does jurisdiction lie exclusively with the West Virginia Workers' Compensation Office of Judges to hear disputes between insurance carriers regarding whether one or both carriers are responsible for contributing toward payment of an employee's workers' compensation benefits?

> (2) West Virginia Code § 33-46A-7(a) requires that parties to a professional employer agreement designate "either" the professional employer organization (PEO) "or" the client-employer as responsible for obtaining workers' compensation insurance coverage for covered employees . . .; and under subsection (b) of the statute, if the PEO is the designated party, the client-employer "shall at all times remain ultimately liable" to provide workers' compensation coverage for covered employees. Do these statutory provisions mandate the designated party's workers' compensation policy as the primary policy over coverage provided by the other party, precluding the PEO and client-employer from agreeing to provide shared coverage? And, if the PEO is designated as the responsible party to obtain workers' compensation coverage, does the term "ultimately" trigger liability by the client-employer for such coverage only if the PEO, or its carrier, defaults?

(Footnote defining "covered employee" omitted). By corrected order[10] entered August 30, 2017, this Court accepted the certified questions. Having considered the parties' briefs, the

---

[9]See *supra* note 2 for an explanation of why it is unnecessary for us to address the third question certified to this Court by the Fourth Circuit.

[10]The order was corrected to reflect the accurate date for oral argument of this matter on the Rule 20 docket of this Court.

brief of Amicus Curiae,[11] the relevant authorities, and the oral arguments presented, we now answer the first certified question in the negative, and the second certified question in the affirmative.

## II.

## STANDARD OF REVIEW

It is well established that "[t]his Court undertakes plenary review of legal issues presented by certified question from a federal district or appellate court." Syl. pt. 1, *Bower v. Westinghouse Elec. Corp.*, 206 W. Va. 133, 522 S.E.2d 424 (1999). *See also* Syl. pt. 2, *Valentine v. Sugar Rock, Inc.*, 234 W. Va. 526, 766 S.E.2d 785 (2014) ("When reviewing a question certified from a federal district or appellate court, this Court will give the question plenary review, and may consider any portions of the federal court's record that are relevant to the question of law to be answered."). Having acknowledged the de novo standard to be herein applied, we proceed to answer the dispositive certified questions presented.

---

[11]We appreciate the participation in this matter of Amicus Curiae, the American Insurance Association.

## III.

## DISCUSSION

We will address in turn the two dispositive certified questions presented by the Fourth Circuit.

### *A. Jurisdiction*

The Fourth Circuit certified the following question pertaining to jurisdiction:

> (1) Does jurisdiction lie exclusively with the West Virginia Workers' Compensation Office of Judges to hear disputes between insurance carriers regarding whether one or both carriers are responsible for contributing toward payment of an employee's workers' compensation benefits?

Before endeavoring to answer this question, we exercise our authority to reformulate the question so that we may fully and clearly address the precise legal issue presented therein. In this regard, we have recognized that

> [w]hen a certified question is not framed so that this Court is able to fully address the law which is involved in the question, then this Court retains the power to reformulate questions certified to it under . . . the Uniform Certification of Questions of Law Act found in *W. Va. Code*, 51-1A-1, *et seq*. . . .

Syl. pt. 3, in part, *Kincaid v. Mangum*, 189 W. Va. 404, 432 S.E.2d 74 (1993). *See also* W. Va. Code § 51-1A-4 (1996) (Repl. Vol. 2016) ("The Supreme Court of Appeals of West

10

Virginia may reformulate a question certified to it."). Accordingly, we reformulate the question as follows:

> Does the Workers' Compensation Office of Judges possess jurisdiction over a declaratory judgment action initiated by an insurance carrier for the purpose of determining whether coverage for an undisputed workers' compensation claim exists under a second policy of insurance such that a second carrier is obligated to contribute to the payment of workers' compensation benefits to an injured employee who suffered a single workplace accident?

For the reasons explained below, we answer this question in the negative.

BrickStreet argues that the West Virginia Workers' Compensation Office of Judges ("OOJ") has no jurisdiction to hear insurance coverage disputes such as the one at issue between BrickStreet and Zurich. BrickStreet notes that Zurich relies on W. Va. Code § 23-5-1 (2009) (Repl. Vol. 2017) to argue that jurisdiction lies with the OOJ. BrickStreet contends that this reliance is misplaced insofar as W. Va. Code § 23-5-1 pertains to the administration of workers' compensation claims, themselves, and not the litigation of insurance coverage issues.

Zurich responds by noting that West Virginia's Workers' Compensation scheme is wholly statutory. Therefore, Zurich contends, the workers' compensation statutes are controlling and exclusive over rights, remedies, and procedures provided therein. Citing W. Va. Code § 23-5-1 and W. Va. Code § 23-5-6 (2003) (Repl. Vol. 2017), which pertain

11

to the administrative process for objecting to an adverse decision in a workers' compensation *claim,* Zurich reasons that, after BrickStreet found Mr. Gutierrez's workers' compensation claim to be compensable, there was a maximum of 120 days within which to challenge the compensability determination and issues related to the chargeable employer. Zurich argues that, because no appeal was filed, the decision is now final. According to Zurich, the time for any administrative challenge has passed; therefore, BrickStreet is jurisdictionally barred from challenging the claim now.

We find Zurich's reliance on the administrative process for appealing a workers' compensation *claim* as a basis for arguing that jurisdiction for the instant insurance dispute lies solely with the OOJ is misplaced. As Zurich correctly points out, this Court has long recognized that "the right to [workers'] compensation *benefits* is wholly statutory." Syl. pt. 2, in part, *Dunlap v. State Comp. Dir.*, 149 W. Va. 266, 140 S.E.2d 448 (1965) (emphasis added). *Accord* Syl. pt. 9, *Simpson v. West Virginia Office of Ins. Comm'r*, 223 W. Va. 495, 678 S.E.2d 1 (2009); Syl. pt. 5, *State ex rel. ACF Indus., Inc. v. Vieweg*, 204 W. Va. 525, 514 S.E.2d 176 (1999). However, this case does not involve an injured employee's right to workers' compensation benefits. It is undisputed that Mr. Gutierrez's claim was found to be compensable, and his entitlement to workers' compensation benefits is likewise not in dispute. Instead, this case involves a conflict between insurance companies who are not parties to Mr. Gutierrez's claim for workers' compensation benefits. *See, e.g.,* W. Va. Code

12

§ 23-5-1(a) (2009) (Repl. Vol. 2017) (establishing, in general, that "[t]he parties to a claim are the claimant and, if applicable, the claimant's dependants, and the employer"). *See also* W. Va. C.S.R. § 93-1-3.2 (OOJ procedural rule clarifying that "'[p]arty' shall mean the injured worker (claimant), claimant's dependants, [and] the employer . . . . Private carriers, insurance agents, and third party administrators are not parties to the litigation.").[12]

The OOJ is a quasi-judicial body that was created to function as "a system of administrative review of orders issued by the Workers' Compensation Commission which orders have been objected to by a party." W. Va. Code § 23-5-8(c) (2005) (Repl. Vol. 2017). In other words, the OOJ possesses the authority to hear disputed workers' compensation *claims*. *See* W. Va. Code § 23-5-8(f) ("The Chief Administrative Law Judge has the power to hear and determine all disputed claims in accordance with the provision of this article[.]"); W. Va. Code § 23-5-9(a) (2007) (Repl. Vol. 2017) ("Objection to a decision of the Insurance Commissioner, private carrier[,] or self-insured employer, whichever is applicable, made pursuant to the provisions of section one [§ 23-5-1] of this article shall be filed with the office of judges."). Indeed, according to procedural rules promulgated by the OOJ,

---

[12]We do recognize, however, that "[i]n claims in which the employer had coverage on the date of the injury or last exposure, the employer's carrier has sole authority to act on the employer's behalf in all aspects related to litigation of the claim." W. Va. Code § 23-5-1(a) (2009) (Repl. Vol. 2017). However, the authority to act on an employer's behalf does not make the insurer a party to the claim. *See* W. Va. C.S.R. § 93-1-3.2

13

> [t]he purpose of the litigation process before the Office of Judges is to receive and consider, as expeditiously and as fairly as possible, evidence and information relevant to the determination of the rights of the parties and to provide a review of claims management rulings made by the claim administrator with regard to the grant or denial of any award, or the entry of any order, or the grant or denial of any modification or change with respect to former findings, orders[,] or awards made pursuant to the West Virginia Workers' Compensation Law, W. Va. Code § 23-1-1 et seq., as amended.

W. Va. C.S.R. § 93-1-4. *See also* W. Va. C.S.R. § 93-1-1.1 ("Scope – These procedural rules shall govern the initiation and conduct of litigation in *contested Workers' Compensation claims* before the Workers' Compensation Office of Judges." (emphasis added)). The underlying insurance dispute simply does not come within the OOJ's authority to review rulings related to contested claims.

Zurich attempts to characterize the instant matter as a dispute over the proper chargeable employer. We disagree with this characterization. As will be demonstrated by our analysis in Section III.B. of this opinion, *infra*, resolving a dispute such as the one underlying the instant proceeding does not call for a determination of who employed the injured worker at the time of his or her compensable injury, but, rather, requires the interpretation of statutory provisions and rules pertaining to professional employer organizations, and a contract made pursuant thereto, in order to determine whether more than one insurance company provided coverage for the incident. We find nothing in the statutes or rules pertaining to the OOJ that grants that body the authority to preside over such a

14

dispute. Accordingly, we now hold that the Workers' Compensation Office of Judges does not possess jurisdiction over a declaratory judgment action initiated by an insurance carrier for the purpose of determining whether coverage for a workers' compensation claim exists under a second policy of insurance such that a second carrier is obligated to contribute to the payment of workers' compensation benefits to an injured employee who suffered a single workplace accident. Applying this holding to certified question number one, we answer the question in the negative.

### B. Primary Policy

The second question certified to this Court by the Fourth Circuit asks:

> (2) West Virginia Code § 33-46A-7(a) requires that parties to a professional employer agreement designate "either" the professional employer organization (PEO) "or" the client-employer as responsible for obtaining workers' compensation insurance coverage for covered employees . . .; and under subsection (b) of the statute, if the PEO is the designated party, the client-employer "shall at all times remain ultimately liable" to provide workers' compensation coverage for covered employees. Do these statutory provisions mandate the designated party's workers' compensation policy as the primary policy over coverage provided by the other party, precluding the PEO and client-employer from agreeing to provide shared coverage? And, if the PEO is designated as the responsible party to obtain workers' compensation coverage, does the term "ultimately" trigger liability by the client-employer for such coverage only if the PEO, or its carrier, defaults?

(Footnote defining "covered employee" omitted).

15

Brickstreet argues that W. Va. Code § 33-46A-7(a) does not create priority of coverage as between a workers' compensation policy purchased by a PEO on a multiple coordinated policy basis for the benefit of the client-employer and a workers' compensation policy purchased to satisfy the client-employer's obligation to "remain ultimately liable under chapter twenty-three [§ 23-1-1 et seq.] of [the] code to provide workers' compensation coverage for its covered employees." W. Va. Code § 33-46A-7(b)(1). Rather, Brickstreet argues that, because Taggart is "ultimately liable" to provide workers' compensation coverage, Taggart's insurer Zurich must contribute to the payment of Mr. Gutierrez's claim.

Zurich responds that W. Va. Code §§ 33-46A-7(a) and (b) mandate that if the PEO is the party designated to provide workers' compensation coverage, then the PEO's workers' compensation policy is the primary policy, and the client-employer's policy is triggered only if the PEO defaults. Moreover, Zurich contends that W. Va. C.S.R. § 85-31-6.3 reinforces the statutory requirement that there will be two policies in effect and dictates which policy will be primary. Zurich avers that, under the circumstances of this case, the BrickStreet policy is primary.

Amicus Curiae, American Insurance Association ("AIA"), in support of Zurich, contends that, under W. Va. Code § 33-46A-7, either the PEO or the client-employer is responsible for providing workers' compensation coverage to covered employees, but not

both. AIA contends that BrickStreet's interpretation of the statute would effectively void the portion of the statute that allows a PEO and a client-employer to designate the party who will provide workers' compensation coverage. According to AIA, the "ultimately liable" provision in W. Va. Code § 33-46A-7(b)(1) clearly intends that the client-employer's workers' compensation coverage would be secondary, responding only in the event BrickStreet's insured, EIN, breached the professional employer agreement's terms by defaulting on its contractual obligation to provide workers' compensation coverage for its covered employees assigned to Taggart. AIA contends this interpretation is supported by W. Va. C.S.R. § 85-31-6.3, which expressly provides that, when there are both a PEO policy and a direct purchase policy in effect, the PEO policy shall be the primary policy. AIA further contends that BrickStreet's reading of W. Va. Code § 33-46A-7 creates significant and burdensome administrative challenges and eliminates a significant incentive to using professional employer agreements.

Insofar as answering this certified question requires scrutiny of the relevant statutory provisions and applicable rules, we are mindful that "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). When this Court's resolution of an issue requires us to pass upon the meaning of a statute or rule, "[w]e look first to the statute's language. If the text, given its plain meaning, answers the

interpretive question, the language must prevail and further inquiry is foreclosed." *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995). *See also Foster Found. v. Gainer*, 228 W. Va. 99, 110, 717 S.E.2d 883, 894 (2011) ("Statutes whose language is plain must be applied as written."); Syl. pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951) ("A statutory provision [that] is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect."). On the other hand, "[a] statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, *Farley v. Buckalew*, 186 W. Va. 693, 414 S.E.2d 454 (1992). *See also Foster Found.*, 228 W. Va. at 110, 717 S.E.2d at 894 ("Statutes. . . whose language is ambiguous must be construed before they can be applied.").

To answer the second question certified by the Fourth Circuit, we begin by examining W. Va. Code § 33-46A-7, which governs how workers' compensation is to be addressed in a professional employer agreement:

> (a) The responsibility to obtain workers' compensation coverage for covered employees in compliance with all applicable law *shall be specifically allocated in the professional employer agreement to either the client-employer or the PEO*.
>
> (b) If the responsibility is allocated to the PEO under the agreement:
>
> (1) The agreement shall require that the PEO maintain and provide workers' compensation coverage for the covered

18

> employees from a carrier authorized to do business in this state: Provided, That the provisions of section seven [§ 23-2-7], article two, chapter twenty-three of this chapter may not be abrogated by a PEO agreement *and the client-employer shall at all times remain ultimately liable under chapter twenty-three [§ 23-1-1 et seq.] of this code to provide workers' compensation coverage for its covered employees*[.]

W. Va. Code § 33-46A-7 (emphasis added).

We first note that the statute uses plain mandatory language to require that professional employer agreements identify which party will bear the responsibility of obtaining workers' compensation coverage: "The responsibility to obtain workers' compensation coverage for covered employees in compliance with all applicable law *shall be* specifically allocated in the professional employer agreement to either the client-employer or the PEO." W. Va. Code § 33-46A-7(a) (emphasis added). By using the word "shall," the Legislature has clearly directed that such a designation must be made. *See* Syl. pt. 1, *Nelson v. West Virginia Pub. Emps. Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982) ("It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.").

Moreover, the statute instructs that the parties to the professional employer agreement must designate "*either* the client-employer *or* the PEO" as the party responsible to obtain workers' compensation coverage. W. Va. Code § 33-46A-7(a) (emphasis added).

19

This language plainly commands a choice of either one or the other.  Indeed, "[r]ecognizing the obvious, the normal use of the disjunctive 'or' in a statute connotes an alternative or option to select."  *Carper v. Kanawha Banking & Trust Co.*, 157 W. Va. 477, 517, 207 S.E.2d 897, 921 (1974).  *See also State v. Wilkerson*, 230 W. Va. 366, 372, 738 S.E.2d 32, 38 (2013) ("The use of the word 'or' indicates an alternative choice." (footnote omitted)); *State v. Rummer*, 189 W. Va. 369, 377, 432 S.E.2d 39, 47 (1993) ("We have customarily stated that where the disjunctive 'or' is used, it ordinarily connotes an alternative between the two clauses it connects." (internal quotations and citations omitted)).  Accordingly, we now hold that, pursuant to W. Va. Code § 33-46A-7(a), parties to a professional employer agreement must designate either the professional employer organization or the client-employer as the responsible party for obtaining workers' compensation insurance coverage for covered employees.

Where the PEO is designated to be the party responsible to obtain workers' compensation coverage, the statute goes on to instruct that

> [t]he agreement shall require that the PEO maintain and provide workers' compensation coverage for the covered employees from a carrier authorized to do business in this state: Provided, *That the provisions of section seven [§ 23-2-7], article two, chapter twenty-three of this chapter may not be abrogated by a PEO agreement and the client-employer shall at all times remain ultimately liable under chapter twenty-three [§ 23-1-1 et seq.] of this code to provide workers' compensation coverage for its covered employees*[.]

20

W. Va. Code § 33-46A-7(b)(1) (emphasis added). This Court is herein asked to determine whether the statutory requirement that "the client-employer shall at all times remain ultimately liable under chapter twenty-three [§ 23-1-1 et seq.] of this code to provide workers' compensation coverage for its covered employees," *id.*, requires a client-employer's insurer to share in the payment of workers' compensation benefits to an injured covered employee even where the PEO has been designated to provide the workers' compensation coverage. We find that it does not.

Because W. Va. Code § 33-46A-7(a) mandates that the parties to a professional employer agreement designate *either* the professional employer organization *or* the client-employer as the responsible party for obtaining workers' compensation insurance coverage for covered employees, an interpretation of W. Va. Code § 33-46A-7(b) that requires contemporaneous coverage by both entities would create an improper conflict between W. Va. Code §§ 33-46A-7(a) and (b).

> In the construction of a statute[,] a court should seek to avoid any conflict in its provisions by endeavoring to reconcile every word, section, or part thereof, so that each shall be effective; and where a statute lends itself to two constructions, one of which will result in an irreconcilable conflict between its provisions, and the other will result in no conflict, the latter construction should be adopted.

Syl. pt. 3, *Ebbert v. Tucker*, 123 W. Va. 385, 15 S.E.2d 583 (1941). Applying the foregoing principle in construing W. Va. Code § 33-46A-7(b), we find the more tenable interpretation

21

of this provision to be that its requirement that "the client-employer shall at all times remain ultimately liable under chapter twenty-three [§ 23-1-1 et seq.] of this code to provide workers' compensation coverage for its covered employees," even though the obligation to do so has been contractually relegated to the PEO, merely ensures coverage for workers in the event that the PEO or its insurer default on their obligation to provide workers' compensation coverage. *Cf. Bowens v. Allied Warehousing Servs., Inc.*, 229 W. Va. 523, 535, 729 S.E.2d 845, 857 (2012) (discussing workers' compensation immunity in the context of general and special employers and observing that "[t]he workers' compensation liability placed upon the special employer may be discharged by requiring and verifying that the statutory general employer obtained workers' compensation coverage. Even though a general employer and special employer may agree between themselves that the general employer is responsible for payment of benefits, the special employer would be liable if the general employer defaulted in that obligation.").

This conclusion is supported by a rule promulgated by the West Virginia Insurance Commissioner, which expressly states that

> 6.3. If on the relevant date of injury there is both a PEO workers' compensation policy in effect and a direct purchase policy[13] in effect, the following shall apply:

_____

[13]A "direct purchase policy" is a policy between the client-employer and an insurer. *See* W. Va. C.S.R. § 85-31-3.6 ("'Direct purchase basis' means an arrangement in which all contractual obligations under the insurance policy run directly between the insurer

(continued...)

> a. If the claimant is a covered employee,[14] then the PEO policy *shall* be the primary policy; or
>
> b. If the claimant is not a covered employee, then the direct purchase policy shall be the primary policy.

W. Va. C.S.R. § 85-31-6.3 (footnotes and emphasis added). Thus, the plain language of W. Va. C.S.R. § 85-31-6.3 answers the second question herein certified by expressly directing, in mandatory fashion utilizing the word "shall,"[15] that where both a PEO workers' compensation policy and a direct purchase workers' compensation policy are in effect, the PEO policy is the primary policy with respect to covered employees. Therefore, coverage

---

[13](...continued)
and the client[-]employer without the involvement of the PEO.").

[14]Pursuant to W. Va. Code § 33-46A-2(c) (2008) (Repl. Vol. 2011),

> "[c]overed employee" means a person employed by a client-employer for whom certain employer responsibilities are shared or allocated pursuant to a PEO agreement. Persons who are officers, directors, shareholders, partners and managers of the client-employer and who perform day-to-day operational services for the client-employer will be covered employees only to the extent expressly set forth in the professional employer agreement.

*Accord* W. Va. C.S.R. § 85-31-3.4. It is undisputed that Mr. Gutierrez is a covered employee.

[15]*See* Syl. pt. 1, *Nelson v. West Virginia Pub. Emps. Ins. Bd.*, 171 W. Va. 445, 300 S.E.2d 86 (1982) ("It is well established that the word 'shall,' in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.").

under the direct purchase policy is triggered only in the event of a default on the part of the PEO or its workers' compensation carrier.

BrickStreet argues that W. Va. C.S.R. § 85-31-6.3 does not apply to the type of insurance policy purchased by EIN insofar as EIN purchased a multiple coordinated policy. According to BrickStreet, the ambit of W. Va. C.S.R. § 85-31-6 is limited to master policies, as demonstrated by its title: "Scope of Coverage for Master Policies." We reject this argument. We have recognized that, "[i]n construing an ambiguity in a statute, this Court will examine the title to the Act of the Legislature as a means of ascertaining the legislative intent, and the overall purpose of the legislation." Syl. pt. 2, *City of Huntington v. State Water Comm'n*, 135 W. Va. 568, 64 S.E.2d 225 (1951). *Accord* Syl. pt. 4, *L.H. Jones Equip. Co. v. Swenson Spreader LLC*, 224 W. Va. 570, 687 S.E.2d 353 (2009). Nevertheless, "it is well established that the title of a statute cannot limit the plain meaning of [its] text." *United States v. Abdelshafi*, 592 F.3d 602, 608 n.4 (4th Cir. 2010) (quotations and citations omitted). *Accord Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212, 118 S. Ct. 1952, 1956, 141 L. Ed. 2d 215 (1998)*; United States v. Buculei*, 262 F.3d 322, 331 (4th Cir. 2001).

Although the title to W. Va. C.S.R. § 85-31-6 refers only to "Master Policies," the body of the rule discusses policies issued on both a master policy and multiple coordinated policy basis. In this regard, paragraph 6.1 of the rule describes the employees

24

who are covered by a policy of insurance "issued to a PEO on *a master policy basis*." W. Va. C.S.R. § 85-31-6.1 (emphasis added).[16] However, paragraph 6.2 delineates the employees who are covered under a "workers' compensation policy of insurance issued to a client[-]employer on a *multiple coordinated policy basis*." W. Va. C.S.R. § 85-31-6.2 (emphasis added).[17] Notably, W. Va. C.S.R. § 85-31-6.3, the provision upon which we rely, does not limit its scope to a particular type of policy. Rather, its application is triggered "[i]f on the

[16]W. Va. C.S.R. § 85-31-6.1 states in full:

A workers' compensation policy of insurance issued to a PEO on a master policy basis shall provide workers' compensation to:

a.      All the direct hire employees of the PEO;

b.      All covered employees working for each client[-]employer of the PEO; and

c.      All other employees of the PEO or client[-]employer required to be provided West Virginia workers' compensation coverage for whom there is no other workers' compensation policy providing coverage effective on the relevant date of injury.

[17]W. Va. C.S.R. § 85-31-6.2 states in full:

A workers' compensation policy of insurance issued to a client[-]employer on a multiple coordinated policy basis shall provide workers' compensation to all covered employees working for the client[-]employer and all other employees of the PEO or client[-]employer required to have West Virginia workers' compensation coverage for whom there is no other workers' compensation policy providing coverage effective on the relevant date of injury.

25

relevant date of injury there is both a PEO workers' compensation policy in effect and a direct purchase policy in effect." W. Va. C.S.R. § 85-31-6.3. Because W. Va. C.S.R. § 85-31-6.3 is not limited in its application to only a certain type of insurance policy, it is not for this Court to add such a requirement. *See Banker v. Banker*, 196 W. Va. 535, 546-47, 474 S.E.2d 465, 476-77 (1996) ("It is not for this Court arbitrarily to read into [a statute or administrative rule] that which it does not say. Just as courts are not to eliminate through judicial interpretation words that were purposely included, we are obliged not to add to statutes [and administrative rules] something . . . purposely omitted." (citations omitted)); *Martin v. Randolph Cnty. Bd. of Educ.*, 195 W. Va. 297, 312, 465 S.E.2d 399, 414 (1995) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." (quotations and citations omitted)); Syl. pt. 1, *Consumer Advocate Div. v. Public Serv. Comm'n*, 182 W. Va. 152, 386 S.E.2d 650 (1989) ("A statute, or an administrative rule, may not, under the guise of 'interpretation,' be modified, revised, amended or rewritten.").[18] Moreover,

> [t]his Court generally accords deference to rules properly promulgated by an administrative agency so long as such rules accord with the intent of the enabling statute pursuant to which they were promulgated. In other words, "procedures and rules properly promulgated by an administrative agency with authority to enforce a law will be upheld so long as they are reasonable and do not enlarge, amend or repeal substantive rights created

---

[18]"[I]t is generally accepted that statutes and administrative regulations are governed by the same rules of construction." *West Virginia Racing Comm'n v. Reynolds*, 236 W. Va. 398, 402, 780 S.E.2d 664, 668 (2015) (quotations and citation omitted).

26

by statute." Syl. pt. 4, *State ex rel. Callaghan v. West Virginia Civil Serv. Comm'n*, 166 W. Va. 117, 273 S.E.2d 72 [(1980)].

*Simpson v. West Virginia Office of Ins. Comm'r*, 223 W. Va. 495, 509, 678 S.E.2d 1, 15 (2009). We find nothing in W. Va. C.S.R. § 85-31-6.3 to indicate that it is not in "accord with the intent of the enabling statute." *Simpson*, 223 W. Va. at 509, 678 S.E.2d at 15.

Based upon the foregoing analysis, we now hold that, pursuant to W. Va. Code § 33-46A-7(b), and W. Va. C.S.R. § 85-31-6.3, when parties to a professional employer agreement designate the professional employer organization ("PEO") as the responsible party for obtaining workers' compensation insurance coverage for covered employees, the policy obtained by the PEO is primary over a policy obtained by a client-employer. Therefore, coverage under a workers' compensation policy purchased by the client-employer is triggered only if the PEO or its carrier default on their obligation to provide workers' compensation coverage. Applying this holding to the second question certified by the Fourth Circuit, we answer that question in the affirmative.[19]

---

[19]Because we find that the policy obtained by the PEO is primary, it is unnecessary for us to answer the third question certified by the Fourth Circuit. See *supra* note 2.

**IV.**

**CONCLUSION**

The certified questions having been answered, we remand this case to the United States Court of Appeals for the Fourth Circuit for further proceedings.

Certified Questions Answered.